Marshall, C. J.
 

 The entire issue in this case is made by the allegations of the petition and the demurrer thereto, and presents two questions for determination:
 

 First. Is injunction the proper remedy to prevent further proceedings in the assessment of compensation, or should that assessment proceeding in the court of common pleas proceed to final judgment, thereby remitting the property owner to an error proceeding for her remedy?
 

 Second. Inasmuch as the city of Cincinnati has full possession of said premises and the right to make the same use thereof as the city could make if it owned the fee-simple title thereto and has entered into a covenant to pay a rental of $2400 per annum and to pay all taxes, levies, assessments, and charges against said premises, can the city relieve itself of these obligations, and can it appropriate for waterworks purposes the fee-simple title to property which it already possesses and
 
 *448
 
 uses for the same purposes without let or hindrance
 
 f
 

 We
 
 will consider these questions in their order.
 

 First: Is injunction a proper remedy?
 

 In the last analysis this question turns upon the further question whether the owner, Sophia Sargent, has a plain, adequate, and complete remedy at law. This question leads us logically to the further question as to what issues can be joined and decided in the proceeding to assess compensation for the taking, now pending in the court of common pleas, and which this action seeks to enjoin. The answer to this question must be found in the statutes which confer the authority and define the procedure for appropriating private property by municipalities for municipal purposes. The pertinent statutory provisions are Sections 3677, 3679, 3680, 3681, 3682, 3683, and, for certain details of the subject, other sections following those referred to. By virtue of Section 3677, in paragraph 13 thereof, general power is conferred upon municipalities to appropriate private property for municipal waterworks, and that paragraph refers to subsequent sections of the same chapter which provide the manner in which that appropriation can be made. Section 3679, being one of the later sections referred to, provides as follows:
 

 “"When it is deemed necessary to appropriate property, council shall pass a resolution, declaring such intent, defining the purpose of the appropriation, setting forth a pertinent description of the land, and the estate or interest therein desired to be appropriated. For waterworks purposes and
 
 *449
 
 for the purpose of creating reservoirs to provide for a supply of water, the council may appropriate such property as it may determine to be necessary.”
 

 Section 3680 provides that immediately upon the passage of such resolution notice shall be given to the property owner, and after such notice council may thereupon pass an ordinance by the votes of two-thirds of all members elected thereto directing such appropriation to proceed. Section 3681 provides that upon the passage of such ordinance the solicitor shall make application to one of the courts named in that section, and that the application shall contain a description of the land, the interest or estate to be taken, the object proposed, and the name of the owner of each lot or parcel thereof. Section 3682 provides that notice shall be served upon the owner in the ordinary manner of serving legal process. Section 3683 provides that after service of such notice “the court shall set a time for the assessment of compensation by a jury, but it may be made at a special term of court, and the jury shall be drawn and the trial proceed as in other civil actions.” The appropriation proceedings in the case at bar not having proceeded further than this point, the subsequent sections of the statutes need not be considered.
 

 It is apparent from those provisions quoted and referred to that the only issue which can be raised in the proceeding to assess compensation for the taking is the value of the property sought to be appropriated. Error could be prosecuted from a judgment in that proceeding, but inasmuch as the only issue in such a proceeding is the question of value, the only legal questions which could
 
 *450
 
 arise and to which exceptions conld be taken as a basis for review in an error proceeding would be questions of service of process, defect of parties, questions concerning the admission and rejection of evidence, the charge of the court upon the proper measure of compensation, and other similar questions, but manifestly could not reach to a determination of the question whether the appropriation of the property is necessary for any public use, or whether there is a public need which is not being served, or whether the proposed appropriation is necessary to supply that service, or whether the property is already being utilized for some other public service which would be interfered with, or whether the present use would be impaired and whether the proposed use is paramount, or whether or not the city already has the use and benefit of the property to the same extent as it is desired to-use the same after such appropriation, or whether there is a contract between the municipality and the owner the obligations of which would be impaired, or whether the proposed use and occupation is in any manner abridged by physical limitations or restricted by legal impediments, or whether it is merely proposed to appropriate additional rights and easements in the land for which it is proposed to pay compensation in addition to the annual compensation already being paid and without interference with the terms, conditions, and covenants of the contract which was made in 1869. If Sophia Sargent merely desired to have an orderly proceeding for assessment of compensation, she could properly be remitted to an error proceeding from any judgment which may be rendered in the com
 
 *451
 
 pensation proceeding. It clearly appears from the allegations of this petition that she desires a more fundamental inquiry.
 

 It is not doubted that many of the preliminary inquiries in an ordinary appropriation proceeding are purely political in nature and legislative rather than judicial. The power of eminent domain is an attribute of sovereignty which may be exercised by the Legislature itself, or that power may be delegated to other governmental agencies, and as a general rule the only limitation upon this legislative authority is that there must not be an abuse of the power granted or bad faith in. its existence or exercise.
 

 All these legislative functions relate to the necessity and exigency of the taking, but owners of private property may judicially inquire whether the specified use is a public use or whether such use will justify or sustain the compulsory taking of private property, and even though the legislative authority has declared the use to be a public one, the courts may properly inquire into the good faith of such declaration and whether there has been a manifest abuse of power. These matters are referred to, not because they appear in this controversy, but as showing that there are some preliminary matters which are subject to judicial inquiry. In the case at bar it is conceded that there is a need for municipal waterworks and that the property in question is adapted to the public use, and no question is made of the necessity or expediency of applying that particular property to the intended use; but it is urged that the property is and has been so used for a period of 54 years,
 
 *452
 
 and .that the city of Cincinnati does not seek to use said premises for any different purposes, or for any broader use, but that it is merely sought to continue the present use in the same manner as heretofore, upon more advantageous terms and conditions than those agreed upon 54 years ago. It is not claimed by the city that the owner is interfering with or limiting the use, or that the time will ever come when the city will be denied the use and occupation thereof for the purposes intended; but, on the contrary, with commendable frankness, counsel for the city have admitted that the property is less valuable at this time than it was when the lease was executed, and it therefore inferentially follows that the real and sole purpose of this proceeding is to obtain a financial benefit which would have no relation whatever to the manner of serving the inhabitants of the city of Cincinnati with a supply of water.
 

 That there are some preliminary questions in which the property owners are interested is manifest from the provisions of Section 3680, General Code, providing for notice being served upon the property owners. If no preliminary questions could be raised, this notice is a pure formality and futility. It seems more reasonable to construe that section as granting the right to the property owner to appear and protest against an appropriation. In the case at bar, however, it appears that the protest which was actually filed by the property owner was ignored. This only indicates how inadequate such a remedy would be; but it may also be observed that, even if the city should grant a hearing upon such protest, it would be wholly in
 
 *453
 
 adequate as a legal remedy because the council of tbe city which had already determined that the property was necessary to the intended use would be in the position of deciding a legal question in which it was interested, and also of having prejudged the case. Even if it be assumed that the property owner has a legal right to protest and to have a hearing, it is certain that no review is provided for an adverse judgment, and it should require no elaborate argument to show that such a legal remedy would be wholly inadequate and incomplete.
 

 The question of the right to enjoin in this case is materially different from any case which has previously been considered by this court, and yet there are two cases which present some analogy.
 

 The case of
 
 P., C., C. & St. L. Ry. Co.
 
 v.
 
 City of Greenville,
 
 69 Ohio St., 487, 69 N. E., 976, was one where a municipal corporation sought to appropriate premises which were in the use and occupation of a railway company and the railway company desired to raise the issue of unnecessary interference with the reasonable use of tracks and other property which would be affected by the appropriation by the city, and it was decided by this court that injunction would lie to restrain further proceeding for the assessment of compensation until the claim of the railway company might be judicially determined. In the opinion, at page 496 (69 N. E., 976, 979), Price, J., discussed principles which are peculiarly applicable to the case at bar:
 

 “There is no provision by which the railway company has a right to file an answer to the application in either of the courts. Answer to
 
 *454
 
 what? The application would contain the proceedings before the council, including the resolution to appropriate and the giving of the preliminary notices, and a pertinent description of each parcel of property appropriated, and ask for the impaneling of a jury to assess compensation. An ‘answer’ to such application would present no issue on the right to appropriate.
 
 *
 
 * * Nor is there any authority for filing a cross-petition by the railway company setting up the unnecessary interference with its property. No provision is made for the making or trial of such an issue, and the court is without authority to render a judgment upon such issue if made.”
 

 This presents a strong analogy to the case at bar. The principle therein decided is sound and applicable to the case at bar.
 

 On the other hand, we are pointed to the case of
 
 White
 
 v.
 
 City of Cleveland,
 
 14 Ohio Cir. Ct. R. (N. S.), 369, which was affirmed by this court without report 87 Ohio St., 483, 102 N. E., 1135. "We are not able to. find any analogy in that case, because the city was seeking to appropriate the fee where it already had an easement; but it clearly appears in the statement of facts, and in the discussion of principles that the fee was needed for an additional purpose and not for a mere continued use for the same purposes for which the easement had been acquired. While it is true that the injunction was refused in that case, nevertheless the case proceeded to final judgment upon the theory that injunction would lie, and that remedy was only refused because the facts and law did not sustain the position of the plaintiff in that case.
 
 *455
 
 The injunction was not denied because of any mistake in theory, but upon a failure to sustain the issues of fact and law. In that case the city in 1872 had acquired an easement in the land for certain limited purposes, and it was sought in the proceeding then pending to subject the land to an increased servitude and to appropriate the reversionary interests thereby acquiring the absolute fee-simple title to the property in order that the city might thereafter use it for the enlarged use, and the pending proceeding was for the purpose of assessing additional compensation for the reversioner’s interest. If we should apply the principles of that case to the instant case, the city of Cincinnati would be required to recognize the condition as it already exists with the lease in full force and effect and the obligation to pay $2400 per annum, and the compensation assessment proceeding would assess merely the value of the reversionary interest, thereby vesting the city in the absolute fee-simple title, and the city would be required to pay the reasonable value of this reversionary interest, in addition to the annual payment of $2400 while the lease continues in force and effect.
 

 The Court of Appeals in this case dismissed the petition for injunction, and its opinion indicates that it reached that result largely upon the theory that on May 6, 1869, when the lease was signed, the city did not have the right to acquire the fee-simple title. The law governing condemnation of property for municipal uses, on May 6, 1869, was the enactment of March 5, 1856, 53 Ohio Laws, 20. That enactment contains no limitations
 
 *456
 
 upon the right to acquire property for waterworks purposes. It does, however, contain the provision that lands the possession of which shall be taken for waterworks purposes shall not be used for any other purpose except by consent of the trustees of the waterworks and the city council. Manifestly, this limitation is unimportant. At a later date, on May 7, 1869, an amendment was adopted containing the following language:
 

 “Each city or incorporated village shall have power to appropriate, enter upon and hold real estate within its corporate limits, for the following purposes; but no more shall be taken or appropriated than is reasonably necessary for the purpose to which it is to be applied.”
 

 Evidently the Court of Appeals adopted tne view that the city might not acquire the absolute fee-simple title if an easement would be sufficient for its purposes. "We think it is a more reasonable construction of that language to hold that it was meant that the city should not take a larger quantity of land than was reasonably necessary, without regard "to the character of the estate by which such quantity should be held. We are therefore of the opinion that the city of Cincinnati could have appropriated the fee-simple title on May 6, 1869, or at any other time subsequent thereto. The Court of Appeals in the instant case was apparently largely influenced by provisions of Section 3692, which provides:
 

 “A municipal corporation may again appropriate, in conformity with the provisions of this chapter, any real estate which it has previously, lawfully appropriated, in order to perfect, in it, a
 
 *457
 
 title in fee simple absolute to such previously appropriated real estate.”
 

 That section was applicable to the controversy in
 
 White
 
 v.
 
 Cleveland, supra,
 
 because, as stated in that case, it was sought to impose an additional servitude, for which it was proposed to pay an additional compensation. It is, however, not applicable to the present controversy, because it is proposed in this case to disregard the existing contract and to assess compensation for the entire value of the property and thereby be relieved from the payment of the annual rental. If in the instant case it was proposed to begin where the parties now stand and merely appropriate the reversion and to pay an additional compensation therefor, that section would clearly be authority for such a proceeding. That section might also be applicable in any case where defects appeared in the contract or proceedings whereby an easement or any estate less than a fee-simple title should be acquired, in order that the city might not be disturbed in its free, uninterrupted use of the premises for the purpose for which the same was acquired. Any construction of that section which would permit it to be employed as an instrument to destroy the obligation of an existing contract in all respects valid and subsisting would to that extent render that section unconstitutional.
 

 We are therefore of the opinion that the owner of this real estate has rights which may not be pleaded effectively in the compensation assessment proceeding, and that the legal remedies provided by the statutes are not full, adequate, and complete.
 

 The second question before us for determination
 
 *458
 
 is so closely related to the first, and the legal principles which have been discussed upon the first question are so applicable to the second question, that little additional need be said. The city of Cincinnati is in the full, free, undisturbed, uninterrupted possession of the property covered by its lease and may use the same for waterworks purposes forever. It has entered into a legal obligation to pay to the successive owners the sum of $2400 per annum. This obligation may not be impaired by any legislative or judicial proceeding. Without considering or deciding whether the city of Cincinnati may maintain a condemnation proceeding to acquire the reversionary interest upon the payment of an additional sum of money while at the same time recognizing its obligation to pay the rentals stipulated in its lease of May 6, 1869, we have reached the conclusion that upon the allegations of the petition in the instant case the city of Cincinnati should not further proceed in the pending compensation case.
 

 The judgment of the Court of Appeals will therefore be reversed and the judgment of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Robinson, Matthias, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.