Hart, J.
Langenau claims that, since the city of Cleveland takes the position that it has the power under Section 3677, General Code, to take only real estate and has no obligation to pay for anything else, even though as a direct result of the appropriation it will take personal property, Langenau is entitled to enjoin the appropriation to protect its constitutional rights in its personal property which will not be taken but will be destroyed.
A court of equity will intervene to prevent the enforcement of claimed rights in a court of law, where it is shown that there are situations, or relations existing between the parties, which would render the enforcement of a single lawful claim unjust or inequitable. 21 Ohio Jurisprudence, 1208, Section 138.
A number of cases are cited by Langenau which it claims support this proposition.
Equity will enjoin a municipality from appropriating property of a railroad company for the purpose of extending a public street across the property where it appears that the extension of the street will unnecessarily interfere with a reasonable use of the tracks of *529 the railroad. P., C., C. & St. L. Ry. Co. v. City of Greenville, 69 Ohio St., 487, 69 N. E., 976.
In the case of Pontiac Improvement Co. v. Board of Commissioners of the Cleveland Metropolitan Park District, 104 Ohio St., 447, 135 N. E., 635, 23 A. L. R., 866, the Board of Commissioners of the Cleveland Metropolitan Park District sought to appropriate outright a certain acreage of land and to acquire certain easements in the remainder, including the right to drastically regulate the owner’s use thereof. An injunction Avas granted.
In the case of Sargent v. City of Cincinnati, 110 Ohio St., 444, 144 N. E., 132, the court enjoined the city of Cincinnati from appropriating for Avaterworks purposes the fee in property Avhich Avas already used by the city for the same purpose under a perpetual lease at a rental Avhich the city regarded as excessive in view of the then present value of the land.
In the case of Emery v. City of Toledo, 121 Ohio St., 257, 167 N. E., 889, an injunction was sought to restrain the city from taking possession of property sought to be appropriated for street and railroad grade separation purposes, on the grounds that the city was seeking to appropriate more property than Avas necessary, that the city did not intend to use all the property for a public purpose, and that the legislation upon which the appropriation proceeding was predicated was insufficient and inadequate. In that case, however, an injunction was refused on the facts.
It will be noted that in the Greenville case the jurisdiction of the court of equity was invoked to test the right of interference with the rights of a public utility having a right of eminent domain and engaged in operating a transportation system thereon; that in the Pontiac Improvement. Company case, under the guise of an appropriation, restrictions were sought to be placed on the use of land not taken; that in the *530 Sargent case the city of Cincinnati sought to relieve itself of an unfavorable lease, the value of the property having declined, which lease, however, afforded it full use of the premises; and that in the Toledo case the question related to the appropriation purposes and was resolved against the property owner.
In none of the cases above referred to was there involved the proper determination of the true value of the property proposed to be appropriated. That issue is exclusively within the jurisdiction of the court in the appropriation proceeding, and such court has the unquestioned authority to determine the value of the property sought to be taken to the full extent of the constitutional rights of its owner therein. Sargent v. City of Cincinnati, supra. It must be remembered that under Section 19, Article I of the Ohio Constitution, “private property shall ever be held inviolate but subservient to the public welfare.”
On this subject, in 29 Corpus Juris Secundum, 1044, Section 175, it is stated:
“Where land is condemned for public uses, the value of buildings or other improvements and fixtures on the land must be considered in determining the owner’s compensation, to the extent that they enhance the value of the land to which they are affixed, the appropriator being required either to take the land with the improvements he finds thereon or to reject it in toto.”
. And, again in 30 Corpus Juris Secundum, 188, Section 446, it is stated:
“In estimating the value of the property taken or injured, as the measure of damages every element which affects or causes a depreciation in the value of the property may be considered. Consideration may be given to the uses to which the property might be applied before and after the taking or injury, or to which it was devoted by the owner at the time of the taking, as having a special value to him * *
*531 It is the duty of the court in the appropriation proceeding to afford Langenau the right to fully show the extent and character of the real estate proposed to be taken and its maximum value for any purpose for which its use is available, including the use which is now made of it. In re Appropriation by Supt. of Public Works, 155 Ohio St., 454, 99 N. E. (2d), 313, paragraph three of the syllabus.
As a further ground for injunctive relief, Langenau claims that the appropriation case involves a condemnation for a nonpublic use in violation of the statutes, the city charter and the Fourteenth Amendment, since, under the contract between the railroad and the transit system, two of the tracks already being used by Nickel Plate will be used by the transit system, and Nickel Plate will relocate its tracks on the premises of Langenau. It relies on the case of City of Cincinnati v. Vester, 281 U. S., 439, 74 L. Ed., 950, 50 S. Ct., 360, wherein the court, in considering the provisions of Section 3679, General Code, requiring the city council as a preliminary to the appropriation of property to specify definitely the purpose of the appropriation, said that “the importance of the definition of purpose would be even greater in the case of taking property not directly to be occupied by a proposed public improvement. ’ ’
Granting that the purpose of the appropriation must be a municipal one and for a public purpose, the question is whether the city may appropriate the property which it will later exchange with a public utility transportation company for the purpose of the necessary readjusting and relocating of the tracks of each. The acquisition of this property by one of the parties for exchange with the other, having like powers and rights of eminent domain, in the adjustment of their tracks results not only in a public benefit but a public use as well. In this respect, the situation differs from that in the Vester case, where the appropriation of excess of *532 land was for the purpose of selling the excess at a profit and using the proceeds to pay for a street improvement.
There is in Ohio a dearth of judicial authority on this specific problem, but there are cases in other jurisdictions which approach the situation here and presented identical or similar legal issues for solution. Although the constitutional and statutory authority in Ohio for the exercise of eminent domain may differ in slight respects from that in other states, in general, the same broad principles involved in taking of private property for a public purpose by eminent domain are applicable in all jurisdictions. We, therefore, call attention to some cases which are so nearly in point with the instant case as to point the way to its solution.
In the case of Pitznogle v. Western Maryland Rd. Co., 119 Md., 673, 87 A., 917, 46 L. R. A. (N. S.), 319, the Western Maryland Bailroad sought to condemn lands of the owner in part for the establishment of expanded railroad facilities and in part for the relocation of a private access roadway as a substitute for an existing roadway which would be destroyed by the establishment of the new railroad facilities. The owner opposed the taking of his land, on the ground, as here, that the taldng would not be for a public purpose so far as the portion to be used for relocation of the private roadway was concerned. The Court of Appeals affirmed the judgment of the lower court which held that authority existed to take the land of the owner for the purposes named. In the course of its opinion the court said:
“The right of eminent domain having been conferred upon the plaintiff by legislative enactment, it has the undoubted right to condemn, if need be, the aforementioned Startzman road or private way for railroad purposes, and in our opinion it was not intended by the framers of the Constitution that there should be *533 no adequate relief from the conditions that we have mentioned, resulting from the taking of said private road for public use. The condemnation of a part of this land, here sought to be condemned, for a substitute private road or way is incident to and results from the taking, by reason of public necessity, of the existing private road for public use, and the use of it for such purposes should, we think, be regarded as a public use within the meaning of the Constitution.
6 C * * *
“* *• * This can no-|; be said of the use to which the lands here sought to be condemned are to be appropriated, for the extinguishment of the defendant’s interest in the property here mentioned enures to the public service, and has connection with and relation to the public welfare. ’ ’
In the case of Dohany v. Rogers, State Highway Commr., 281 U. S., 362, 74 L. Ed., 904, 50 S. Ct., 299, 68 A. L. R., 434, the State Highway Commissioner of Michigan, as a part of a scheme to widen a state highway which would necessitate taking an existing railroad right of way, undertook to acquire additional adjacent land upon which to relocate a right of way, having first entered into a contract with the railroad company for a proposed exchange of lands. The court held that the proposed taking of excess land for the new railroad right of way was within the power of eminent domain and that such taking was for a public purpose. The court said:
“We need not inquire whether, under the peculiar provisions of the Michigan statutes, the proposed taking of appellant’s land is for highway or railway purposes. It is enough that although the land is to be used as a right of way for a railroad, its acquisition is so essentially a part of the project for improving a public highway as to be for a public use.” Citing Brown v. United States, 263 U. S., 78, 68 L. Ed., 171, *534 44 S. Ct., 92, and Pitznogle v. Western Maryland Rd. Co., supra. See, also, Fitzsimons & Galvin, Inc., v. Rogers, 243 Mich., 649, 220 N. W., 881.
In the case of Smouse v. Kansas City Southern Ry. Co., 129 Kan., 176, 282 P., 183, the court said:
“When a railway company, because of the growth of its business, finds it necessary to condemn additional land for sidetracks, switch yards and the like, and on the land necessary to be condemned is a private way of ingress and egress to the premises of a private party which must be removed, the railway company may, in addition to the land necessary for the placement of its tracks and yards, condemn on the land of another a way of ingress and egress for the party whose existing way of ingress and egress is taken, for the purpose of relocating such way of ingress and egress. The additional land so taken cannot be said to be taken for a private purpose, but is necessary for the public purpose of the railway company.” See, also, George D. Harter Bank, Trustee, v. Muskingum Watershed Conservancy Dist., 53 Ohio App., 325, 4 N. E. (2d), 996, appeal dismissed, 130 Ohio St., 337, 199 N. E., 217; Darwin v. Town of Cookeville, 170 Tenn., 508, 97 S. W. (2d), 838; Town of Cookeville v. Farley, 171 Tenn., 260, 102 S. W. (2d), 56; Meisel Press Mfg. Co. v. City of Boston, 272 Mass., 372, 172 N. E., 356; Weyel v. Lower Colorado River Authority (Tex. Civ. App.), 121 S. W. (2d), 1032; State, ex rel. Bruestle, City Solicitor, v. Rich, Mayor, 159 Ohio St., 13, 110 N. E. (2d), 778.
If the city of Cleveland does not have authority to appropriate the land upon which the Nickel Plate tracks are to be relocated, the railroad has the power to do so. Municipal corporations are given authority to appropriate by Section 19, Article I of the Ohio Constitution, and railroads are given authority to condemn for right of way purposes by Section 5, Article XIII. The rule for compensation is exactly the same in either *535 case. Giesy v. Cincinnati, Wilmington & Zanesville Rd. Co., 4 Ohio St., 308. Langenau is not, therefore, prejudiced because condemnation is being made by the city. The relocation of the Nickel Plate right of way is in itself for a public use by a quasi-public corporation having authority in its own right to exercise the power of eminent domain. Under the circumstances presented in the instant case, Section 3677, General Code, is sufficiently broad to permit the city to acquire lands for its bona fide construction purposes and as an incident thereto to acquire land necessary to relocate the railroad right of way being taken for rapid transit purposes. See Fitzsimons & Galvin, Inc., v. Rogers, supra.
Langenau complains further that the use of money owned by or loaned to the city to condemn property for a private property right of way violates Section 6, Article VIII of the Ohio Constitution; and that the contract to convey property to Nickel Plate and the appropriating resolution in furtherance of that purpose violate certain sections of the Cleveland city charter and ordinances. In the opinion of the court these claims are not tenable.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Middleton, Taet, Matthias, Zimmerman and Stewart, JJ., concur.