OHIO POWER CO., APPELLEE, *v.* DILLER ET AL., APPELLANTS.

[Cite as Ohio Power Co. v. Diller, 18 Ohio App. 2d 167.]

168

(No. 408—Decided May 21, 1969.)

*Mr. Claud L. Recker, Messrs. Day, Ketterer, Riley, Wright & Rybolt,* and *Mr. T. Bryan Underwood, Jr.,* for appellee.
*Messrs. Light, Siferd & Light,* for appellants.

GRAY, J. This cause is in this court on appeal from two judgments of the Common Pleas Court of Putnam County.

Plaintiff brought an action to condemn certain land belonging to defendants, upon which land towers were to be erected by plaintiff to carry its power lines.

Defendants, feeling aggrieved by the judgments entered in the trial court, filed their notice of appeal and assigned the following errors:

1. The judgment of the lower court on the questions of necessity was against the weight of the evidence.

2. The judgment of the lower court on the questions of necessity was contrary to law.

3. The court erred in admission of evidence at the hearing on the question of necessity.

4. The court erred in failing to rule that as a matter of law there was no necessity for plaintiff to take the rights and easements in defendants' land that plaintiff seeks to appropriate in this case.

5. The court erred in failing to rule that Section 163.-09 of the Revised Code is, or at least parts thereof are, unconstitutional.

6. The lower court erred in refusing to admit defendants' exhibits B, C, D and E which are photographs of conditions on other farms in the immediate vicinity of the farm of defendants caused by construction of the same type plaintiff proposes to undertake on defendants' property.

7. The lower court erred in failing to strike the testimony of plaintiff's appraiser, Hardesty, although his testimony as to compensation and damages was based on a misinterpretation of the law and of the easements plaintiff seeks to appropriate across defendants' land.

8. The lower court erred in refusing to permit defendant Kenneth Diller to testify concerning the price at which defendants had sold an easement for ingress and egress to A. T. & T. over another farm a half mile away from the farm over which plaintiff is appropriating an easement in this case.

9. The lower court erred in its general charge to the jury.

We will now address ourselves to the issues of the right of plaintiff to make the appropriation and the necessity for the appropriation.

Section 4933.15, Revised Code, states in part:

"Any company organized for manufacturing, generating, selling, supplying, or transmitting electricity, for public and private use, * * * and may appropriate so much of such land, or any right or interest therein, including any trees, edifices, or buildings thereon, as is deemed necessary for the erection, operation, or maintenance of an electric plant, * * * transmission and distribution lines, poles, towers, piers, conduits, cables, wires, and other necessary structures and appliances, or for rights of way

over such land and adjacent lands for the purpose of access to any part of such land. * * *."

The Legislature of the state of Ohio has seen fit by the enactment of Section 4933.15, Revised Code, to grant to the grantee, in this instance the plaintiff, the right to take land by eminent domain, and in doing so the Legislature did not impose any of the restrictions claimed by defendants.

In order to decide these questions it is necessary to revert to the fundamentals governing the points involved.

Section 19, Article I of the Ohio Constitution states in part as follows:

"Private property shall ever be held inviolate but subservient to the public welfare. * * * and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

Section 163.09 (B), Revised Code, the constitutionality of which is challenged, provides, in part, as follows:

" * * * *Upon such questions, the burden of proof is upon the owner.* A resolution or ordinance of the governing or controlling body, council, or board of the *agency* declaring the necessity for the appropriation shall be prima-facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity. * * *." (Emphasis added.)

The antecedent of Section 163.09 (B), Revised Code, is Section 2709.10, Revised Code. The pertinent part of this section is as follows:

"On the day named in a summons first served, or publication first completed in an action by a corporation to appropriate private property, the Probate Judge or the Court of Common Pleas shall hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation. *Upon all these questions the burden of proof is upon the corpora-*

*tion,* and any interested person shall be heard. * * *'' (Emphasis added.)

The antecedent of Section 2709.10, Revised Code, pertaining to the determination of the necessity of the taking, is Section 11046, General Code (112 Ohio Laws 172, 173 [1927]), which is as follows:

''On the day named in a summons first served, or publication first completed, the Probate Judge or the Court of Common Pleas shall hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation. *Upon all these questions the burden of proof shall be upon the corporation,* and any interested person shall be heard.'' (Emphasis added.)

The antecedent of Section 11046, General Code, is Section 6420, Revised Statutes (72 Ohio Laws 71, 72), which is as follows:

''On the first appearance day in the appropriation proceeding, of which any property owner set forth in the petition has been duly notified by summons or publication, and before issuing a notice for the selection of a jury, the Probate Judge shall proceed to inquire and determine the questions of the corporate existence of the corpration, its legal right to make appropriation under this act, the inability of such corporation to agree with the owner or owners of the property sought to be appropriated, and the necessity for the appropriation, upon all which questions any of the property owners present may be heard, *and the corporation shall satisfy the court affirmatively by satisfactory proof.''* (Emphasis added.)

Section 163.01, Revised Code, states in part, as follows:

''As used in Sections 163.01 to 163.22, inclusive, of the Revised Code:

''(A) 'Public agency' means any governmental corporation, unit, organization, or officer authorized by law to appropriate property in the courts of this state. 'Private Agency' means any other corporation authorized by law to appropriate property in the courts of this state.

'Agency' includes any public agency or private agency."

Section 163.09 (B), Revised Code, sets out the procedure for determining the necessity for the appropriation. It places the burden of proof upon the owner and states further that the resolution of the board of the agency declaring the necessity for the approprition shall be prima facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity.

It was obviously the intent of the Legislature in using the words "prima facie" that the action by the board of the agency, in this case the electric utility, created a presumption, subject to be rebutted, that the determination of such electric utility was just, reasonable and correct, and that the only method prescribed by Section 163.09 (B), Revised Code, to rebut this presumption is by showing that the agency abused its discretion. It must be emphasized that the term "agency" includes both "public" and "private" agency.

In the case of *Emery* v. *Toledo* (1929), 121 Ohio St. 257, 264, the Supreme Court said:

" * * * This court, in *Sargent* v. *City of Cincinnati*, 110 Ohio St. 444, 144 N. E. 132, followed *P., C., C. & St. L. Ry. Co.* v. *City of Greenville*, 69 Ohio St. 487, 69 N. E. 976, in holding that in a proceeding to assess compensation for taking private property by a municipality for public use the only issue to be tried is the value of the property, and, further, that the question of public need and the extent of that need is a political question, and not justiciable. This doctrine is universal. It has been so declared in *Shoemaker* v. *United States*, 147 U. S. 282, 298, 13 S. Ct. 361, 37 L. Ed. 170, and *Sears, Trustee*, v. *City of Akron*, 246 U. S. 242, 38 S. Ct. 245, 62 L. Ed. 688. * * *"

That case was decided in 1929 when Section 11046, General Code (112 Ohio Laws 172, 173), was in effect. In this section of the General Code no distinction or differentiation was made between a "public" or "private" agency —the same as the law stands today.

We believe that Section 163.09 (B), Revised Code,

merely codified the law as it had existed previously in relation to the necessity for the appropriation and the rebuttal of the necessity thereof.

We think that this position is borne out and fully explained in *Sargent* v. *Cincinnati,* 110 Ohio St. 444, 451, wherein the court said:

"It is not doubted that many of the preliminary inquiries in an ordinary appropriation proceeding are purely political in nature and legislative rather than judicial. The power of eminent domain is an attribute of sovereignty which may be exercised by the Legislature itself, or that power may be delegated to other governmental agencies, and as a general rule the only limitation upon this legislative authority is that there must not be an abuse of the power granted or bad faith in its existence or exercise."

In the light of the provisions of the Constitution and of the Ohio case law, we are of the opinion that this area of the law now under discussion has been pre-empted by the Legislature except in cases of fraud, bad faith and abuse of discretion. The question of necessity is a political question and is not justiciable except upon the single ground set forth in Section 163.09 (B). The other questions in this case are those to be presented to the jury, which are the amount of compensation for the land taken and the amount of damages to the residue.

The Supreme Court, in *Cincinnati* v. *Louisville & Nashville Rd. Co.,* 88 Ohio St. 283, 294, held that Section 6420, Revised Statutes, was constitutional. This section is one of the antecedents of Section 163.09 (B), Revised Code.

We wish to emphasize the fact that all that Section 19, Article I of the Ohio Constitution provides is that, where private property is taken for public use, a compensation therefor shall first be made in money and damages shall be assessed by a jury.

1 Nichols on Eminent Domain 573 states:

"That the legislature may delegate to municipal and private corporations the right to determine what public improvements they will construct and to take by eminent

domain the land required for such improvements, and the decisions of such corporations upon the utility and necessity of the improvements which they decide to construct cannot be questioned in the courts, except in a plain case of abuse. * * *''

The reason for the rule is simple enough; the courts have no power to revise any enactment of the Legislature unless it violates some clause of the Constitution.

In the absence of any express statutory or constitutional limitation on the amount of land to be taken, the delegatee of the power possesses a large discretion as to the amount of land to be taken for the public purpose in question. The discretion is not reviewable by the courts except for abuse of discretion, bad faith, or fraud.

The tract of land in question contains 79 acres. The proposed easement runs in a northeasterly-southwesterly direction for a distance of 1,600 feet over this land. The proposed easement is 150 feet wide. Some of the towers are ''V'' shaped and made of aluminum. They are anchored by wires running from the ''V'' shaped arms to the ground.

There will be approximately 23 V-type towers along the whole line. The plaintiff prefers this type of tower because it takes longer to get the standard steep towers.

Plaintiff's engineers testified that it was necessary to construct an additional transmission line between Fostoria Central and East Lima to insure proper service to consumers.

In the brief of defendants it is strongly urged that there is an excessive appropriation by plaintiff. It is contended that only 676 square feet are necessary for one standard self-supporting steel tower but that 8,428 square feet are necessary for each of the ''V'' shaped aluminum towers with guy wires attached.

The verdict of the jury was for $4,800 compensation for land taken and $8,400 damages to the residue, making a total of $13,200.

Defendants placed a value on the whole farm of $900 per acre and the sum of $2,100 per acre for the proposed easement.

Neither the Constitution nor the statutory law of Ohio places any limit on the amount of land to be appropriated except there cannot be any abuse of discretion in the amount taken. No such cause has been shown.

The plaintiff presented testimony of its engineers showing the necessity of securing the right of way. Defendants countered with their own testimony which was presented by laymen, the defendants, who were neither engineers nor were they in a position to know or determine the necessity of the proposed line.

We specifically hold that Section 163.09 (B) is constitutional as related to placing the burden of proof on the landowner. Defendants take exceptions to the Legislature placing such burden of proof on them. For the purposes of this case it would make no difference in the end result, because they introduced no evidence of probative value to refute the prima facie case made out by plaintiff in the passage of a resolution by its board, nor did the landowners offer any evidence of probative value to meet the burden of proof placed upon them relating to showing the necessity of the appropriation or the amount of land necessary to be appropriated by the agency.

Section 163.09 (B) makes the resolution of the agency declaring the necessity for the appropriation prima facie evidence of such necessity. In addition to the resolution, the agency introduced testimony of its engineers concerning the necessity of the appropriation and the need for additional transmission facilities in this area.

The trial court, on this question, found in favor of the plaintiff. If there is any substantial evidence to support the decision of the trial court, we must do so. *In re Tilton*, 161 Ohio St. 571, 577. We cannot substitute our judgment for that of the trial court. *Trickey* v. *Trickey*, 158 Ohio St. 9, 14. We specifically find that there was substantial evidence to support the judgment of the trial court on the necessity of the appropriation by the agency on the amount of land to be taken.

Defendants have not shown, nor have they attempted to show by testimony of engineers, that there was no necessity for the appropriation. Defendants have not shown

abuse of discretion of plaintiff in making the appropriation.

"Abuse of discretion" has been defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the agency in determining the necessity of making the appropriation.

There is nothing in the record to even suggest this type of behavior on the part of the officers and agents of plaintiff.

The Supreme Court, in *Pennsylvania Co.* v. *McCann*, 54 Ohio St. 10, in the first paragraph of the syllabus, says:

"The general assembly of this state has authority to prescribe the circumstances that shall constitute *prima facie* evidence of a fact in issue in an action on trial in the courts of this state, whether the cause of action to which it relates arose within or without the territorial limits of the state."

At page 17 in the opinion, the Supreme Court further says:

"There can be no doubt respecting the general power of a state to prescribe the rules of evidence which shall be observed by its judicial tribunals. * * *"

Defendants claim that Section 163.09 (B) is unconstitutional in that it places the burden of proof on defendants. It should be noted that in Section 6420, Revised Statutes, in Section 11046, General Code, and in Section 2709.-10, Revised Code, the burden of proof was cast on the corporation, or agency, as it is now denominated. The burden of proof is now cast upon the property owner. Section 163.09 (B). It is our opinion, and we so hold, that the Legislature can place the burden of proof where it in its wisdom desires. We know of no constitutional limitation, and none has been cited to us.

If the Legislature formerly could place the burden of proof on the corporation or agency, it certainly can now place the burden of proof on the property owner in this type of action. Neither party has a vested right to have the burden of proof placed upon the opposite party.

The case of *Pennsylvania Co.* v. *McCann,* 54 Ohio St. 100, was decided in 1896. It stands unreversed and unmodified.

One of the principles of constitutional government, which was considered by the founders of the Republic as of vital importance, was the separation of the powers of the state into three branches, legislative, executive and judicial. The Constitution of Ohio specifically prohibits the encroachment by any one of these branches of the government upon the powers of either of the others. *State, ex rel. Finley, Judge,* v. *Pfeffer,* 163 Ohio St. 149.

In recapitulation: (1) the Constitution of Ohio provides only that when private property is taken for public use a compensation shall first be made in money; (2) the Legislature has authority to prescribe the circumstances that shall constitute prima facie evidence of a fact in issue in the courts of this state; (3) the Legislature has authority to prescribe the rules of evidence which shall be observed by its judicial tribunals, and in this connection may place the burden of proof where it in its wisdom deems best; (4) the only manner in which the decision of a grantee of the power of eminent domain to exercise its right of appropriation of private property for public use can be attacked is on the basis of abuse of discretion on the part of such grantee; and (5), further, the doctrine of separation of powers contained in our Constitution requires this result.

We are of the opinion that assignments of error Nos. 1 to 5, inclusive, are not well taken.

The court now comes to consideration of the assignment of error No. 6. We believe that the trial court properly excluded photographs of conditions on other farms in the immediate vicinity of the farm of defendants. The photographs would in nowise appear to represent the matter in controversy in such a way as to be instructive to the jury, nor would they exemplify correctly the situation or surroundings at the time of the construction of the towers on defendants' land.

Assignment of error No. 6 is overruled.

We do not think that the trial court committed prejudicial error in refusing to strike the testimony of Mr. Hardesty from the record. Section 4933.15, Revised Code, states, in part:

" * * * and may appropriate as much of such land, or any right or interest therein, including any trees * * * as is deemed necessary for the erection, operation, or maintenance of an electric plant, including its generating stations, substations, switching stations, transmission and distribution lines, poles, towers, piers, conduits, cables, wires, and other necessary structures and appliances, or for rights of way over such land and adjacent lands for the purpose of access to any part of such land. * * *."

We are of the opinion that the Legislature has seen fit to give electric companies broad rights in this connection, and, upon reading Section 4933.15, Revised Code, we believe that once the wires and lines are erected the electric companies have been given the power and authority to properly maintain the lines and cables so as to insure safety to the public, proper service to the consumer and for the protection of persons who might come in contact with wires and transmission lines if the same were improperly maintained.

Assignment of error No. 7 is overruled.

The following question, answer, objection, ruling of the court and proffer appear in the record:

"By Mr. Siferd:

"Q. Now, Mr. Diller, Mr. Underwood asked you about the evaluation that you placed on this easement; now, will you explain to the jury why you placed a value of $2,100 per acre, if you want to put it that way, for the easement, when you have valued the farm itself at $900 per acre; what is the basis for that difference? A. The basis for that, is an easement which is quite harmless, relatively harmless compared to this; off the side of another tract, we had sold to another company—.

"Mr. Underwood: Objection.

"Your Honor.

"Mr. Siferd: You cross-examined about this.

"The Court: Wait a minute. (Discussion off the record.)

"The Court: Now, sustain the objection to the question and answer, and ask the jury to disregard both the question and answer.

"Mr. Siferd: (Answer proffered by Mr. Siferd: let the record show that if the witness had answered, if he had been permitted to answer, he would have testified that he had—he, his brother and sister, have previously sold an easement to the AT&T for ingress and egress over his other farm, a half mile down the road, and that the price they had—that AT&T paid for the easement was substantially the same as the value he has placed on this easement.)"

We fail to see any prejudicial error committed by the trial court as alleged in this assignment of error. We are unable to see how such evidence would be relevant to the issues, because no facts are set forth in the proffer which would make the two easements comparable, and thus it would not be instructive to the jury or in any wise enable it to properly discharge its function.

Two types of utilities are involved. One operates a telephone system which requires the transmission of a very small amount of power, the other operates an electric utility which operates a high tension system transmitting power at high voltages. Some utilities bury their lines, and others string their wires overhead. Some construct a cable with many wires contained therein. Others need to string a number of wires located far apart. One needs a wide easement in some instances, in other cases a narrow easement would suffice. The length of the A.T.&T. easement is not given, neither is the width. We are well aware that some courts have held that the value of other pieces of land is admissible on direct examination, while other courts have held such evidence is only admissible on cross-examination. We are also well aware that evidence is admissible

only if sufficient similarity in nature, location and time is shown.

However, we wish to base our opinion on this point upon the basis that in this type of proceeding the admission and exclusion of evidence as to the value of the land and other related subjects rest to a large extent in the discretion of the trial court, and, where it is apparent that such court did not abuse its discretion in these respects and that no prejudicial error intervened, a reviewing court will not interfere. *In re Appropriation by Ohio Turnpike Commission,* 164 Ohio St. 377; *In re Appropriation for Highway Purposes,* 111 Ohio App. 146. No prejudicial error intervened in this instance.

This assignment of error is overruled.

We find no prejudicial error in the trial court's charge as set forth in assignment of error No. 9.

We are well aware that in the spirited trial of any law suit incidents occur that in retrospect might have been avoided, but here, as in all cases, we are interested in the fact whether a party has been accorded a fair trial. We believe that defendants received a fair trial.

We are of the opinion that appellants (defendants) have not shown any prejudicial error in any of the particulars assigned and argued, and for that reason, the judgments, or orders, of the trial court must be affirmed.

*Judgments affirmed.*

Younger, J., concurs.
Guernsey, J. (Presiding), concurs in part.

Guernsey, J., concurring in part. I concur in the judgment and in so much of Judge Gray's opinion as I do not here specifically except to.

I cannot concur in Judge Gray's statement to the effect that the area of law dealing with the determination of necessity of appropriation has been pre-empted by the Legislature and that necessity is a political question which

"is not justiciable except upon the single ground set forth in Section 163.09 (B)," *i. e.,* upon abuse of discretion. Section 163.08, Revised Code, prescribes that the "necessity for the appropriation shall be resolved by the court in favor of the agency unless such matters are specifically denied in the answer and the facts relied upon in support of such denial are set forth therein." Section 163.09 (B) then provides that when so denied the court shall hear such question, in which event "the burden of proof is upon the owner" and "a resolution * * * declaring the necessity for the appropriation shall be prima-facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity." In determining the necessity for an appropriation of real property, the discretion to be exercised lies entirely with the appropriating authority. Its exercise is a political determination which may be set aside only for an abuse of such discretion or by reason of the existence of fraud or bad faith in its exercise. Appropriation proceedings are statutory proceedings. When such statutes do not provide for the determination of the issue of necessity by the court as a preliminary question to the assessment of compensation by a jury, the issue may only be determined by an independent action in equity in which the questions of the existence of fraud, bad faith, or abuse of discretion, may be raised. On the other hand, when, as here, provided by statute, the determination of the issue of necessity by the court, when properly raised in the pleadings, is a preliminary question to the assessment of compensation by the jury. When so raised, the existence of fraud, bad faith, or abuse of discretion, is an affirmative defense to be affirmatively proved by the property owner, upon which he has the burden of proof. To this extent, and to this extent only, the property owner has the burden of proof on the necessity for the appropriation. In this respect, and as so interpreted, the placing of such burden of proof on the property owner is constitutionally proper. As the existence of a resolution of the appropriating agency declaring the

necessity for the appropriation constitutes part of the actual proof that such agency has exercised its discretion and arrived at a political determination of such necessity, the Legislature could properly make the existence of such resolution "prima-facie evidence of such necessity in the absence of proof showing an abuse of discretion." This does not prevent such proof from being also overcome by a preponderant showing of the existence of fraud or bad faith in the exercise of the agency's discretion. See 29A Corpus Juris Secundum 1153, Eminent Domain, Section 269.

Implicit in Judge Gray's opinion is an indication that testimony showing necessity for an appropriation is peculiarly within the province of engineers and that engineers' testimony may not be successfully countered by testimony of nonexperts. With this I cannot agree. Certainly, the testimony of engineers may be entitled to much weight because of their expertise. It does not follow, however, that such testimony cannot be overcome by the testimony of knowledgeable laymen. It is entirely a matter of weight which must be determined by the trier of fact and, particularly with regard to matters which may be of common knowledge, testimony by nonexperts may be entitled to much weight.

I cannot agree that the landowners "introduced no evidence of probative value to refute the prima facie case made out by plaintiff in the passage of a resolution by its board, nor did the landowners offer any evidence of probative value to meet the burden of proof placed upon them." To the contrary, the landowners made every reasonable effort to maintain their burden of proof of showing abuse of discretion, fraud and bad faith not being involved. On the issue of abuse of discretion the evidence was conflicting, so that reasonable minds might differ as to the conclusions to be drawn therefrom. On this state of the evidence, the trial court, the trier of the fact on this issue, having concluded that there was no abuse of discretion either as to the extent of the easement taken by reason of the nature of the towers and supports or as to the extent

of the easement necessary for maintenance purposes, we cannot hold, as a matter of law, to the contrary.

With respect to assignment of error number 8, the property owners have argued as to the right of submitting evidence on direct examination of the sales price of similar property in the vicinity. This court has specifically recognized the admissibility of such evidence on direct examination in the case of *In re Appropriation for Hwy. Purposes,* 15 Ohio App. 2d 55 (motion to certify allowed January 15, 1969, case No. 68-556), when the proper conditions exist.

I conclude that the appellants (defendants) have not shown any prejudicial error in any of the particulars assigned and argued and that the judgments, or orders, of the trial court must be affirmed.