BRANFORD VILLAGE CONDOMINIUM UNIT OWNERS' ASSN. ET AL., APPELLEES, *v.* CITY OF UPPER ARLINGTON, APPELLANT.

(No. 82AP-410—Decided August 18, 1983.)

*Mr. William L. Stehle* and *Mr. Cleve M. Johnson,* for appellees.

*Mr. Robert J. Holland,* city attorney, and *Mr. Craig R. Mayton,* for appellant.

WHITESIDE, P.J. Defendant, city of Upper Arlington, appeals from a judgment of the Court of Common Pleas of Franklin County, enjoining Upper Arlington from proceeding with a pending action to appropriate land owned by plaintiffs. Upper Arlington raises four assignments of error, as follows:

"1. The Court below exceeded its authority by substituting its judgment for that of the duly constituted legislative body, the Council of the City of Upper Arlington.

"2. The Court below erred in issuing an injunction where, as shown, there was no basis in law or fact for such an order.

"3. The Court below erred in permitting into evidence the testimony of Plaintiffs' 'expert' city planning consultant; and

"4. The finding of an inadequate roadway not comporting to code is against the manifest weight of the evidence."

Upper Arlington commenced eminent-domain proceedings to appropriate the property in question for the purpose of constructing a service road behind a shopping center. The proposed service road would connect Reed-Henderson Center and Greentree Shopping Center and run behind property occupied by a MacDonald's restaurant, a Sohio station and another commercial establishment.

Plaintiffs then brought this action seeking to enjoin Upper Arlington from proceeding with the eminent-domain proceedings claiming the preliminary legislation was void because of conflict of interest of a council member, that the taking was for a private, rather than a public, purpose and that defendant had abused its discretion because of inadequacy of the roadway. The trial court rejected the first two contentions.

Defendant states that the difference between the first two assignments of error is that the first deals with an abuse of power and the second with an abuse of discretion. However, the issues of these two as well as the fourth, overlap to such

an extent that we shall essentially discuss them together.

Defendant first contends that a separate injunction action is improper because R.C. 163.09(B) affords an adequate remedy. While this is true as to some issues and some eminent-domain proceedings, this appropriation is for a public road, and R.C. 163.08 provides: "* * * when taken * * * for the purpose of making or repairing roads * * * open to the public, without charge, an answer may not deny the right to make the appropriation * * * or the necessity for the appropriation." Where the issue cannot be raised in the eminent-domain proceedings, a separate injunction action may be brought to enjoin an abuse of municipal power. *Sargent* v. *Cincinnati* (1924), 110 Ohio St. 444; *Emery* v. *Toledo* (1929), 121 Ohio St. 257; *In re Appropriation of Easements* (1960), 170 Ohio St. 276 [10 O.O.2d 332]. Thus, to this extent, the first assignment of error is not well-taken.

However, as defendant points out, the trial court cannot substitute its judgment for that of the Upper Arlington City Council but is limited to a determination of whether its action was arbitrary, unreasonable, or otherwise an abuse of discretion. *Ohio Power Co.* v. *Diller* (1969), 18 Ohio App. 2d 167 [47 O.O.2d 292]. Here, the trial court found the action of the Upper Arlington City Council to be unreasonable under the circumstances and, thus, an abuse of discretion.

The issue before us is not whether we agree with the factual findings of the trial court, but whether they are supported by competent credible evidence. See *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. This is directly raised by the fourth assignment of error but also permeates the other assignments of error.

To determine whether or not the trial court's determination is against the manifest weight of the evidence, it is first necessary to ascertain what those findings are. The trial court expressly made the following factual findings:

"It is the Court's conclusion based upon all the testimony that the proposed roadway is inadequate and does not relate to the code requirements. The roadway appears to be too narrow to serve its proposed function. This would constitute a danger to public safety both as to vehicular traffic, pedestrians, bicyclists, oversized trucks and vans, and private cars.

"The narrowness of the proposed roadway indicates a significant danger to the safety of the public and the smooth and efficient movement of the traffic. Such hazards concern this Court and indicate that additional planning is necessary and proper."

The significant finding of the trial court is to the effect that the proposed roadway constitutes a public nuisance. The trial court specifically found that, as proposed, the roadway would constitute "a significant danger to the safety of the public," and further found that it constitutes a "hazard." Earlier, the trial court found that the roadway as proposed "would constitute a danger to public safety." R.C. 723.01 specifically requires a municipal corporation to keep all streets "open, in repair, and free from nuisance." Necessarily, construction of a service road which would constitute a nuisance if constructed is not a proper public purpose. Defendant municipal corporation has no power or right to appropriate property in order to create a public nuisance. The trial court's factual finding indicates that the roadway proposed to be constructed would constitute a public nuisance if constructed in the manner presently proposed. Thus, there can be no merit to defendant's second assignment of error since there is a basis in law for the granting of the permanent injunction as granted by the trial court, unless its findings of fact are against the manifest weight of the evidence, which is the issue

raised by the fourth assignment of error, not the second assignment of error.

It is inappropriate to refer and rely upon testimony of a city manager as to the intent of a city council in adopting an ordinance, even more so than it is to rely upon the testimony of a single council member as to the intent, since at least the council member could express his own view; whereas, a city manager does not even have a right to vote upon the ordinance. Yet, this is the type of evidence relied upon by the defendant to support the second assignment of error. The Upper Arlington City Manager's testimony is entitled to no weight whatsoever as to the intent of the ordinance, it being inappropriate for that purpose, even though no · objection was raised with respect thereto. The issue, of course, is what does the ordinance state, not what did the city manager think.

It is agreed by the parties that plaintiffs' Exhibit 6 was adopted by the city council as the Final Report Henderson Center Plan. While this plan, of necessity, is not detailed, it must be kept in mind that this is a platting type of plan, not a land-use plan pertaining to the specific land or construction plans for specific construction. More importantly, in this plan, there is a referral to a 1962 master plan of the city of Upper Arlington, which also relates to the area in question. Unfortunately, that master plan is not in evidence. On the other hand, there is nothing in that plan which specifically relates to the proposed improvement of the roadway in question. Rather, as all master-type plans, the provisions are general, indicating that pedestrian safety should be a concern in constructing streets. As to the city manager's testimony, there is nothing in the evidence indicating any amendment or modification of the ordinance adopting the Final Report Henderson Center Plan or of the plan itself.

Upper Arlington does not have a specific subdivision regulation concerning service roads. It is clear, however, that a service road is a public street, or a minor street. Section 1203.08 of the Upper Arlington Subdivision Ordinances provides that: "Alleys, where platted, shall have a minimum width of twenty feet." Here, there is no plat, and the provision does not apply. More importantly, as to minimum right-of-way width, Section 1203.06 provides that minor streets and dead-end streets must have a fifty-foot right-of-way. On the other hand, Section 1203.09(b) provides that minor streets may have a pavement width of only twenty-eight feet; whereas, Section 1203.09(c) provides that alleys and service drives shall have a minimum pavement width of twenty feet. The issue found by the trial court, however, was not the width of the pavement but, rather, the width of the right-of-way. The hazard created was the fact that the pavement with the curb, of necessity, would include almost the entire right-of-way contemplated to be used. This the trial court found to be a hazard partly because there was no place for pedestrians in the right-of-way if two cars passed each other. However, the subdivision regulations are not directly applicable and have no direct bearing upon the outcome herein. They do constitute a determination by city council as to what type of safety regulation is necessary in planning and platting for streets, including alleys and service drives, even though not necessarily applicable, inasmuch as we are not concerned with a subdivision but, rather, with an improvement by the city involving the appropriation of private property.

The right-of-way varies from twenty-two to thirty feet and, thus, would be in violation of Section 1203.06(d) of the Upper Arlington ordinances, if applicable, which requires a fifty-foot minimum right-of-way. The additional right-of-way would provide the room for the pedestrians noted by the trial court as being a need. Unfortunately, the trial court used the word "roadway" as referring to the

entire right-of-way, rather than to the paved portion thereof, which does create some confusion. Thus, the second assignment of error is not well-taken.

The third assignment of error raises a crucial issue. The issue is the admissibility of the testimony of the plaintiffs' expert witness upon which the trial court presumably relied in making its factual determinations.

Defendant contends that plaintiffs' expert witness should not have been permitted to express his opinion as to the adequacy of the service road or its compliance with good planning concepts, citing *Grisanti* v. *Cleveland* (App. 1962), 89 Ohio Law Abs. 1. In that case, however, the issue was whether the trial court abused its discretion in excluding certain evidence. Here, the issue is whether the trial court abused its discretion in admitting the expert witness testimony since whether to admit expert testimony rests largely in the trial court's discretion. See the ninth paragraph of the syllabus of *Railroad Co.* v. *Defiance* (1895), 52 Ohio St. 262; and the second and eighth paragraphs of the syllabus of *Ohio Turnpike Comm.* v. *Ellis* (1955), 164 Ohio St. 377 [58 O.O. 179].

No issue has been made as to the qualifications of the witness as an expert. The objection was to the relevancy and competency of the evidence and not to specific questions or answers. As to the basic determination, the establishment of a service road, the witness testified it was a "good plan," and, thus, to that extent there could be no prejudice.

This expert not only testified that this particular improvement did not comport with the plan for the area in terms of providing for pedestrian travel, but also specifically expressed the opinion that the proposed improvement creates a safety problem. He further indicated that the plan previously adopted by Upper Arlington would call for a separate pedestrian walkway system, which is more desirable. Moreover, he indicated no provision for pedestrian travel constitutes an undesirable situation because of the danger involved. He further indicated that the narrowness of the roadway, twenty feet, would create some hazard with respect to truck traffic, apparently because of the width of the trucks and the difficulty in passing. Other evidence supports the same conclusions.

Evid. R. 702 sets forth the basis for admission of expert testimony. Evid. R. 401 defines "relevant evidence". Even assuming the trial court could have excluded the testimony, and plaintiffs had no "right" to have such expert testimony admitted, we find no abuse of discretion in admitting the testimony under the circumstances reflected in the record since it meets the requirements of Evid. R. 401 and 702. The third assignment of error is not well-taken.

The evidence indicates that there is no place for pedestrian travel within the proposed right-of-way over a large portion of the length of the proposed service road except by walking in the paved portion of the roadway also used by vehicular traffic. It does not require any great expertise to recognize the safety hazard created if a pedestrian is walking on the roadway and two vehicles try to pass each other at the same location where the roadway is only twenty feet wide and the right-of-way is only twenty-two feet wide. Nor did defendant present any evidence contradicting the evidence of the safety hazards created by the plan in question. The fact that the remedy may be to appropriate more of plaintiffs' land does not justify permitting the city to create a nuisance which constitutes a hazard both to pedestrian and vehicular traffic.

The trial court's findings to the effect that a nuisance would be created and expressly that a safety hazard would be created are supported by competent credible evidence. This court cannot properly substitute its judgment for that of the trial court as to which evidence to believe and which evidence not to believe. To

reach the result urged by defendant, some evidence presented by defendant would have to be given greater credence than that presented by plaintiffs and, accordingly, plaintiffs' evidence would be rejected. But, this was a matter for the trier of the facts, the trial court in this instance, and this court cannot appropriately substitute its judgment for that of the trial court as to the weight to be given to the evidence, or which evidence to believe and accept and which evidence to disbelieve and not accept. Only by substituting our judgment for that of the trial court and weighing the evidence independently and rejecting all the evidence favorable to the finding of the trial court can this court reach the conclusion urged by defendant. The judgment of the trial court is not against the manifest weight of the evidence, as will be discussed further, *infra.*

Returning to the first assignment of error, this was not a matter that the trial court substituted its judgment for that of the city council. That was not the issue presented or decided by the trial court, even though the trial court was required to and did defer to legislative wisdom where discretion was involved. However, we find no basis for sustaining that assignment of error. The very issues discussed in connection with the second, third and fourth assignments of error clearly indicate the impropriety of sustaining the first. Only if it be concluded that the trial court is powerless to enjoin an appropriation of property for the purpose of creating a public nuisance is the first assignment of error well-taken. On the contrary, the law is clear that the court of common pleas may enjoin the appropriation of property sought to be taken for the purpose of creating a public nuisance. In making the determination necessary for this assignment of error, as well as the second, it is necessary that this court refrain from picking and choosing which evidence to accept but, instead, we are bound to construe the evidence most strongly in favor of supporting the finding of the trial court, and only if, when so con-

strued, reasonable minds could not reach the conclusion reached by the trial court can this court sustain either the first or second assignment of error. Here, the result in the court of common pleas was debatable as to whether clearly a public nuisance would be created, and defendant urges us to accept its evidence, rather than plaintiffs'. However, the proper test is to consider plaintiffs' evidence at its best, giving the advantage of every possible reasonable inference to plaintiffs and then determine whether or not that evidence so construed permits the findings of the trial court bearing in mind that that court must defer to legislative wisdom as to discretionary matters. When the proper test is applied, there can be no question but that the trial court's findings are supported by the evidence and are not contrary to law as contended by the first two assignments of error. The first assignment of error must be overruled.

Having reviewed the evidence and the record, it is clear that, if the proper tests are applied, the trial court's judgment must be affirmed. Construing the evidence most strongly in favor of plaintiffs, and the factual findings of the trial court, it is possible to make the factual findings which the trial court made. In making such conclusions, it was necessary for the trial court not to accept or not to believe certain testimony and evidence presented by defendant. However, this was the prerogative of the trial court, and this court cannot properly substitute its judgment for that of the trial court and reinstate the evidence rejected by the trial court in weighing the evidence and predicate a different conclusion upon such rejected evidence. To do so constitutes substituting our judgment for that of the trial court with respect to the weight to be given the evidence, not construing the evidence most strongly in favor of the factual findings reached by the trial court.

Further considering the fourth assignment of error, the manifest-weight issue, there is competent credible

evidence supporting the factual findings of the trial court. Here, there necessarily is a very limited weighing of the evidence to determine whether or not the evidence is competent and credible. However, even after indulging in such limited weighing of the evidence, it is clear that there is competent credible evidence supporting the trial court's finding. In weighing the evidence, the trial court was entitled to reject certain evidence and accept other evidence. If the evidence which the trial court chose to accept is competent and credible, we may not substitute our judgment for that of the trial court and determine the judgment to be against the manifest weight of the evidence merely because there is other evidence which the trial court rejected, which would permit a contrary result, and which this court would consider to be more credible than that accepted by the trial court. The test of manifest weight is not which evidence is more credible but, rather, whether or not the evidence relied upon by the trial court is competent and credible. The fourth assignment of error is not well-taken.

For the foregoing reasons, all four of plaintiffs' assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, J., concurs.

MOYER, J., dissents.

MOYER, J., dissenting. The majority correctly concludes that this court is not permitted to substitute its judgment for the judgment of the trial court. However, equally compelling is the rule that a court may not substitute its judgment for the judgment of a legislative body.

The court of common pleas apparently decided that sidewalks and a wider roadway would be desirable improvements so it enjoined the city from proceeding without incorporating these improvements in its plans. In other words, the trial court substituted its judgment for the considered judgment of the Upper Arlington City Council. Since I believe that it is wrong for this court to compound the trial court's error by approving the trial court's legislative decision making, I must respectfully dissent.

Under the doctrine of separation of powers (*Ohio Power Co.* v. *Diller* [1969], 18 Ohio App. 2d 167 [47 O.O.2d 292], at 177), and the presumption that a legislative body best knows the needs of its community (*Allion* v. *Toledo* [1919], 99 Ohio St. 416, syllabus; *Railroad Co.* v. *Defiance* [1895], 52 Ohio St. 262, at 312-313), in a suit brought to enjoin appropriation proceedings, the trial court may not substitute its judgment for the judgment of the city's legislative body, nor may the court inquire into the wisdom of the appropriation. As the Court of Appeals for Coshocton County recently stated:

"* * * The court system is charged with making legal decisions. Legislative bodies are charged with making policy decisions. As long as any reasonable evidence exists on behalf of legislative policy decisions, it is not the function of the court system to second guess such decisions. * * *" (*State, ex rel. Ohio Civil Serv. Emp. Assn.,* v. *Coshocton* [1982], 5 Ohio App. 3d 5, 8.)

The trial court's power is limited to determining whether the city either acted fraudulently or in bad faith or abused its discretion in resolving to appropriate plaintiffs' property. *Emery* v. *Toledo* (1929), 121 Ohio St. 257, paragraph three of the syllabus; *Railroad Co.* v. *Defiance, supra,* paragraph eight of the syllabus; *Ohio Power Co.* v. *Diller, supra,* at 173; *Shepard Paint Co.* v. *Bd. of Trustees* (1950), 88 Ohio App. 319, 326-328 [45 O.O. 109]; *Jones* v. *Maumee* (1925), 20 Ohio App. 455, 458-460. In the present case, plaintiffs have not alleged that the city acted fraudulently or in bad faith and there is no evidence which would support such allegations. Plaintiffs contend,

however, that the city abused its discretion in three ways: the proposed road is too narrow, no sidewalks are provided, and there are no curb cuts leading from the service road to the businesses on the northern boundary of the road.

"Abuse of discretion" has been defined as an unreasonable, arbitrary, unconscionable, or capricious attitude on the part of the appropriating agency. See *Ohio Power Co.* v. *Diller, supra,* at 176. The term " 'connotes more than an error of law or of judgment.' " *Neiswender* v. *Edinger* (1978), 59 Ohio App. 2d 25, 29 [13 O.O.3d 96]; *Bd. of Edn.* v. *Holding Corp. of Ohio* (1971), 29 Ohio App. 2d 114, 125 [58 O.O.2d 165].

The trial court's decision stated in part that "* * * the proposed roadway is inadequate and does not relate to the code requirements. The roadway appears to be too narrow to serve its proposed function. * * * [A]dditional planning is necessary." That conclusion hardly rises to the standard of capricious, arbitrary or unconscionable. This court's power of review in this case is limited. Just as the trial court may not substitute its judgment for the judgment of defendant's city council, if the trial court's express finding that the city's proposed roadway is inadequate demonstrates that it implicitly found that the city abused its discretion, and these findings are supported by the evidence, this court should not substitute its judgment for that of the trial court.

Although the majority opinion is silent with respect to the test to be applied by the trial court to an act of ·a city's legislative body, it is, simply stated: Did the city council abuse its discretion, *i.e.,* did it act unreasonably, arbitrarily, unconscionably or capriciously?

We should first examine the precise action of city council to which plaintiffs object. Ordinance 13-76, amended by Ordinance 7-79 and Ordinance 79-80, merely authorized the city attorney to file a complaint to appropriate land for public street purposes, stated the value of the easements to be appropriated, and set aside money to be deposited with the court to pay the property owners for the appropriated property. The ordinance, as amended, states that it shall take effect immediately to preserve the public peace, health or safety from the hazard presented by the congested traffic conditions in the area. The ordinance does not mention the Final Report Henderson Center Plan or the specific improvements contemplated by the city.

The minutes of the city council meeting at which council "approved" the final report are not a part of the record on appeal, but a copy of the city charter is before us. Section XI of the charter charges the city manager with the power and duty to see that ordinances are enforced. Since the city manager is charged with implementing the ordinance which began the appropriation process, his testimony, which covered the proposed use of the land to be appropriated and not the intent or interpretation of the ordinance itself, was competent and relevant.

Upper Arlington's City Manager testified that the Final Report Henderson Center Plan, which was approved by city council on May 28, 1974, was to be used as a "planning guide" and that it was not a final immutable plan. He further testified that the "entire concept" of the Final Report Henderson Center Plan "is as a planning tool." Appendix II to the plan, which mentions pedestrian walkways, is titled "Sample Development Criteria." The city manager testified that city council "in its infinite wisdom can accept or reject any or all components of it," and characterized the final report as a report which "advocates the Service Road concept." The city manager's testimony highlights the obvious nature of the final report, which is full of abstract ideals and planning concepts and does not contain detailed drawings and specifications for a proposed service road.

The city has conducted or caused to be

conducted at least eleven studies of the Henderson Road area over many years. Plaintiffs' own expert witness observed that, "[t]he plans are not complete and the ones which I saw did not have specifications, so *to make a full, complete judgment on what is proposed is pretty difficult.* * * * [T]his is a preliminary set of plans. * * *" (Emphasis added.) It can hardly be argued that city council abused its discretion by adopting a plan which sets forth the history of the planning area and the abstract and ultimate goals towards which any plan to reduce traffic congestion should strive. Nor can it be said that the city erred by failing to follow the Final Report Henderson Center Plan since none of the reports, suggestions or guidelines are final or mandatory. Presumably, the legal description attached to Ordinance 79-80 is the specific definition of the road that the trial court found to be inadequate and in violation of code requirements. The holding of the majority indicates that a city cannot adopt plans which evaluate the feasibility of an improvement unless it is prepared to proceed with a project which incorporates every desirable aspect of the plan regardless of its feasibility in terms of funding and practicality. The final report, standing alone, does not require the city to incorporate the specific details plaintiffs request.

Plaintiffs claim defendant abused its discretion (not, created a nuisance) in three specific ways. First, they claim the roadway is too narrow. Both parties rely on Upper Arlington city ordinances contained in the section titled "Subdivision Regulations." For some reason, Chapter 900, titled "Streets," does not contain requirements for the width of streets, so the requirements of the Subdivision Regulations Chapter should be considered. Reading these ordinances indicates that the majority's conclusion, that "[i]t is clear * * * that a service road is a public street, or a minor street," is not clear at all. Rather, the majority has chosen to draw this conclusion without considering the scheme of the city's ordinances. The Upper Arlington Subdivision Ordinances pertaining to street widths read as follows:

"1203.06 MINIMUM RIGHT-OF-WAY WIDTHS OF STREETS, ALLEYS, AND EASEMENTS FOR UTILITIES

"* * *

"(d) Minor streets and dead-end streets: Fifty feet. * * *

"* * *

"1203.08 ALLEYS: Alleys, where platted, shall have a minimum width of twenty feet.

"1203.09 MINIMUM PAVEMENT WIDTHS: Minimum pavement widths, back to back of curb, * * * shall be as follows:

"* * *

"(b) Minor streets not over six hundred feet long: Twenty-eight feet. * * *

"(c) Alleys and service drives: Twenty feet."

Plaintiffs argue that the proposed road is a "minor street" which is required by Ordinance 1203.09(b) to have a minimum pavement width of twenty-eight feet and by Ordinance 1203.06(d) to have a minimum right-of-way of fifty feet. The city claims that the proposed road is a service road, which, according to Ordinance 1203.09(c), must have a minimum pavement width of twenty feet. Unfortunately, neither "service road," "service drive," nor "minor street" is defined in the regulations. But virtually all of the testimony refers to the area in question as a "service road." The city further argues that, since alleys and service drives are grouped together in Ordinance 1203.09(c) and since there is no category entitled "service roads" in Ordinance 1203.06 which provides the requirement for right-of-way widths, the minimum right-of-way for service roads must be the same minimum right-of-way required for alleys in Ordinance 1203.08, that is, twenty feet.

Any analysis of these arguments is

somewhat impeded by a lack of clarity in the ordinances and their headings. However, it is clear that no city ordinance mandates a minimum right-of-way width for service drives and there is almost no discussion by those who testified regarding right-of-way width. Therefore, I can only conclude that the city council, for whatever reason, decided that there shall be no required minimum right-of-way width for service roads. Thus, the proposed service road cannot be in violation of the city's minimum right-of-way requirements.

Although the pavement width of the proposed service road is not contained in the Final Report Henderson Center Plan, plaintiffs' expert planner testified, and plaintiffs' Exhibit 3 shows, that the pavement width of the proposed service road is twenty feet. Ordinance 1203.09(c), which explicitly requires a minimum pavement width of twenty feet for service roads and alleys, has been complied with.

Assuming, as the parties seem to agree, that the road will indeed be at least twenty feet wide, the designation of the road as a service drive and the service road's proposed width do not violate the city ordinances referred to by the parties. Since there is no ordinance requiring a wider road, it cannot be said that the city abused its legislative discretion in this regard.

Plaintiffs' second claim concerns the absence of sidewalks. Once again, I note that a court is not permitted to substitute its judgment for the wisdom of a legislative authority. That conclusion is also based upon the well-established rule that a city, when it undertakes improvements, is not required to cure all ills at once. *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143 [30 O.O.2d 491], paragraph four of the syllabus. Indeed, it would be virtually impossible to cure all the ills in the congested area created by a lack of good planning in the Henderson-Reed Road area.

Plaintiffs' expert, when asked whether sidewalks were "necessary," answered only that they would be "de-

sirable." Plaintiffs have not cited any city ordinance requiring the city to build sidewalks along proposed service roads. Nor did they offer evidence showing how many streets or service roads in Upper Arlington have or do not have sidewalks. In addition, plaintiffs' argument that the absence of sidewalks violates the Final Report Henderson Center Plan fails due to the report's character as a planning guide or tool. The final report does not require the city to build sidewalks. While the inclusion of sidewalks along the service road would undoubtedly accommodate the residents of Branford Village and others, in the absence of a requirement to provide them, the city may apply its judgment in determining the desirability or feasibility of such an improvement. An alleged error in judgment is not enough to demonstrate an abuse of discretion. It is not the function of a court to supplant the policy decision of a legislative body with its own idea of what is desirable. Plaintiffs have not proven that the city abused its discretion in failing to plan sidewalks along the proposed service road.

Plaintiffs' third specific claim is that the failure to plan curb cuts between the proposed service road and the abutting properties on the north constitutes an abuse of discretion. Plaintiffs argue that without curb cuts providing access to the commercial properties to the north, the proposed road will not alleviate congestion on Henderson Road; it will merely link the Greentree and Reed-Henderson shopping centers without improving access to the properties between the two shopping centers.

Although an independent consulting engineer whose firm prepared plans for the proposed service road testified that the firm had not planned any curb cuts, he also testified that he did not know whether there were existing curb cuts behind the businesses that abut the property in question. Defendant's city manager testified that the site plans for the businesses located between Hender-

son Road and the proposed service road all show curb cuts providing access between the commercial establishments and the proposed road. Furthermore, the minutes of the city council meetings reveal that the building plans for the commercial establishments north of the proposed road were approved by city council contingent upon the city receiving twenty-foot easements for the proposed roadway and upon rear access from the commercial establishments to the proposed road being incorporated in the building plans or being built when the proposed road was complete. Thus, plaintiffs have failed to prove that the city did not plan curb cuts, that there are no curb cuts in existence or that a failure to plan curb cuts would constitute an abuse of discretion.

Plaintiffs have not shown that the city's planning amounts to an unreasonable or capricious use of its legislative discretion in any specific manner. Although the testimony seems to indicate that pedestrian walkways and extensive landscaping might be desirable, courts lack the authority to order a city to plan the finest and most expensive improvements a plaintiff's expert can imagine or recommend. Plaintiffs' expert planner's suggestions included rerouting existing roads through plaintiffs' condominium complex; screening plaintiffs' property from the sight, sound and smell of vehicles traveling on the proposed road; and relocating the condominium's carports. These proposals, although they may be desirable, are not the proposals approved by the city's legislative body which must consider the desires of all of its residents, the availability of funding and the many other practical considerations which must be weighed when any legislative body makes any decision.

The city recognized that growing traffic congestion on Henderson Road was creating a problem and adopted a proposal to build a service road to relieve this congestion. Since the city has not abused its discretion, the trial court erred in substituting its judgment regarding desirable improvements, and the majority's decision merely serves to compound that error.

The majority has, by injecting a public nuisance theory into this case which was not raised by the parties or relied upon by the trial court, decided the case on a theory which was never argued, briefed or decided. The majority opinion summarily concludes that the trial court "* * * may enjoin the appropriation of property * * * for the purpose of creating a public nuisance" without providing a definition of "nuisance," without mentioning the distinction between public and private nuisance, without distinguishing the line of cases holding that an act authorized by the legislature cannot be a public nuisance (*e.g., State, ex rel. Brown,* v. *Rockside Reclamation, Inc.* [1976], 47 Ohio St. 2d 76 [1 O.O.3d 46], paragraph three of the syllabus), and without alleging that the statutory procedures for enjoining a nuisance have been complied with or are inapplicable. See R.C. 3767.03 to 3767.06. There was no evidence presented to support the majority's conclusion that the proposed service drive would constitute a public nuisance.

As the majority states, "* * * the result * * * was debatable." For this reason, the city council's legislative decision, and not the trial court's decision, should prevail.

For the foregoing reasons, I would sustain the first, second and fourth assignments of error, reverse the judgment of the trial court and remand with instructions to dissolve the injunction and permit the city to proceed to appropriate the land.