[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION AND JUDGMENT ENTRY
This case is on appeal from the July 1, 1999 judgment of the Erie County Court of Common Pleas, which granted appellees, Carl and Lucille M. Hanson, a permanent injunction against appellant, the city of Huron, to prevent the city from appropriating their property. On appeal, appellant asserts the following assignments of error:
 "I. The trial court erred in ruling that the City's appropriation constituted `fraud, bad faith, and an abuse of discretion' based on its finding that the appropriation did not satisfy the `necessity' requirements of Ohio Revised Code § Code 163.09(B). (Judgment Entry, at pp. 1-2; Findings of Fact and Conclusions of Law, at p. 9).
 "II. The trial court erred in ruling that the City's appropriation constituted `fraud, bad faith, and an abuse of discretion' based on its finding that the appropriation consisted a taking for private, and not public, use. (Judgment Entry, at pp. 1-2; Findings of Fact and Conclusions of Law, at p. 8).
 "III. The trial court erred in ruling that the City's appropriation constituted `fraud, bad faith, and an abuse of discretion' based on its finding that the appropriation did not constitute an appropriation for a `public street.' (Findings of Fact and Conclusions of Law, at p. 9).
 "IV. The trial court erred in ruling that the City's appropriation constituted `fraud, bad faith, and an abuse of discretion' based on its finding that the appropriation will create a public nuisance. (Findings of Fact and Conclusions of Law, at pp. 8-9)."
The city brought a R.C. 163.06(B) appropriation action against the Hansons, owners of property at issue in this case located at the southeast corner of the intersection of Route 2 and Rye Beach Road and adjacent to Sawmill Parkway. In their answer, the Hansons argued that the appropriation: is unauthorized, unlawful, unconstitutional, and unnecessary; is not being done for a public use; and is improper because the city's actions are a product of fraud, bad faith, and an abuse of discretion. The Hansons also brought suit against the city seeking: a declaration that the city council's resolution to appropriate their land was illegal and invalid; a judgment that the city breached its land sale contract with the Hansons; and an injunction to prevent the city from appropriating their land. The two cases were consolidated.
A preliminary injunction hearing was held, which was later consolidated with the permanent injunction hearing by agreement of the parties. At the hearing, the following evidence was presented.
The city purchased an approximately five-acre parcel of land in 1984 from the estate of William Beatty. The title work issued for that transaction listed a recorded easement granted to the state of Ohio for highway purposes in 1971 for "all rights or easements of direct access to or from Rye Beach Road, * * *." The purpose of the easement was to restrict access rights along Rye Beach Road for approximately two hundred seventy feet to reduce potential safety risks around the interchange. Beatty received $11,650 for the easement. The city manager testified that the Beatty deed, title work, and easement papers were in the city's possession prior to the sale of the property in 1996.
In 1995, the city determined that it no longer needed this parcel for municipal purposes and sought to sell it to a private party. The city hired Dan Hartung Jr. to survey the property and split it into two parcels. The property was split into a northern parcel (Parcel A) and southern parcel (Parcel B). John Stock purchased Parcel A in March 1996 for $190,000 to operate a Wendy's Restaurant. The Hansons purchased Parcel B in April 1996 for $175,000 to relocate, consolidate, and expand their local businesses.
During the negotiations, Stock wanted a warranty from the city that he would have at least sixty feet of direct access to Rye Beach Road. While the city made this warranty, the agreement also provided that Stock had to object to any easements or waive objection to them. The purchase agreement required Stock to procure and deliver to the city evidence of fee simple title to Parcel A by securing a commitment to issue title insurance from the Hartung Title Agency, Inc. After obtaining the commitment, Stock had thirty days to object to the marketability of the title. If he failed to do so, he would "* * *conclusively be deemed to have approved the status of the title * * *." The city was required under the agreement to provide a survey to Stock which indicated all easements.
Stock obtained a commitment for title insurance on April 26, 1996, which noted the 1971 easement to the state of Ohio. Rosino testified that he requested and received a copy of the 1971 easement. In a letter of May 13, 1996, Stock indicated to the city that he had some concerns about the easements and could not accept the title until he learned about the locations of the various easements. Maurice McDermond Jr., the City Law Director, responded by letter that with the exception of one easement not relevant to this case, there was nothing the city could do about the easements. He informed Stock that he had to determine whether he wanted the property with those easements. Stock's attorney testified that he was led by the title company to believe that the easement was going to be removed from the title. Nonetheless, the final commitment for title issued November 11, 1996 included the same exceptions, including the 1971 easement. Stock never made any objection to the title to the property. In a letter dated July 17, 1996, Stock's attorney indicated to McDermond that Stock was ready to purchase the property if two environmental problems were resolved. Rosino stated that "[t]he title matters have been resolved to our satisfaction." The deal was finally closed in November 1996.
Stock built a Wendy's Restaurant on Parcel A with an access drive on Rye Beach Road. In July 1997, the Ohio Department of Transportation (hereinafter referred to as "ODOT") informed Stock that the driveway violated their easement right.
Stock then demanded that the city provide him with sixty feet of frontage on Rye Beach Road. Stock wanted the city to appropriate a portion of the Hansons' property to provide him with access.
Hanson testified that after the sale, he renovated the building on the property and moved one of his businesses there. The business has invested $350,000 to $400,000 in the property since the purchase and had begun to comply with the other requirements of the purchase and sale agreement. In April 1997, Hanson began to take bids for expansion of the building to the north. The property to the west of the building would be needed for trucks to reach the loading docks at the back of the building. Hanson further testified that he would never have purchased the property if he knew that the city would want some portion of it back. Since the appropriation action was threatened, Hanson believed it was not prudent to add the addition to the building and, therefore, has not consolidated his businesses at this location as he promised to do.
City council meeting minutes of August 11, 1997, indicate how the above-mentioned easement was overlooked by the parties. When Hartung surveyed the property, there was no indication of the 1971 easement in the County Engineer's office. Therefore, Hartung relied upon the 1960 plans to determine where to place the frontage for Parcel A. He never knew about the 1971 easement. Nonetheless, the easement was recorded and was properly shown in the preliminary and final commitments for title insurance when Parcel A was sold in 1996.
The parties attempted to resolve the mistake amicably. The city tried to negotiate a waiver of the easement for Parcel A, but ODOT refused because the department took the position that a drive at that location was unsafe and the department was not responsible for the mistake. The city was forced to look for another solution or lose the interchange and delay the on-going repairs to Route 2. The city negotiated with the Hansons to purchase the western portion of Parcel B to provide access to Parcel A. A curved driveway was finally proposed to accommodate the Hansons' need to expand. The Hansons refused to sell this property, however, because it would interfere with their expansion plans. The Hansons proposed that the city repurchase Parcel B and the Hansons would relocate their business elsewhere; but, city council rejected this offer. Finally, the Hansons offered to sell the eastern portion of Parcel B for the roadway from Sawmill Parkway to Parcel A. Hanson testified that Stock rejected this offer because the access to Wendy's would be too burdensome for the traffic coming from Route 2 and it would therefore be rejected by Wendy's International.
In the 1996 ordinances authorizing the sale of each parcel and in the corresponding purchase and sale agreements, the city had expressly noted that the properties were not needed for public or municipal use. Nonetheless, at the April 12, 1999 meeting of city council, the council resolved that it was necessary to appropriate a portion of the Hansons' property to construct a public street to the Stock property. At trial, McDermond denied that the city was appropriating a portion of the Hansons' property to provide a driveway to Parcel A. However, the surveyor's description of the property to be appropriated, which was attached to the resolution, identifies the property as the "WENDY'S NEW DRIVEWAY PARCEL." Furthermore, McDermond testified that the appropriation was necessary to resolve its liability under the purchase and sale agreement with Stock and to prevent postponement of the repair work on Route 2 or loss of the Rye Beach Road interchange.
The following evidence was presented as to the issue of whether the proposed drive would violate the 1971 easement or ODOT's standards. McDermond testified that even if the proposed driveway was built, it violates the state of Ohio's 1971 easement. Michael Schweickart, a registered professional engineer, also testified that, in his expert opinion, the proposed driveway would not comply with ODOT standards because the drive falls within six hundred feet of the interchange. Such a drive would create an unsafe traffic flow, especially because it will be close to the existing drive on Parcel B. Schweickart admitted, however, that the department has made exceptions for the standards if they are not economically feasible. Michael Weiler, a civil engineer for ODOT, testified that the proposed "temporary" driveway is acceptable to the district office of ODOT. Admitted into evidence was a letter from ODOT approving of the relocated driveway. However, this letter was written in response to the city's letter to ODOT requesting approval of the "temporary road" until the process of obtaining a waiver of the limited access requirements for the existing driveway was completed.
Following the hearing, the court granted the permanent injunction. The court found that: 1) the appropriation violated Section 19, Article I of the Ohio Constitution, and the Fifth andFourteenth Amendments to the United States Constitution because the appropriation was not done for a public purpose, was not necessary, was fraudulent, was done in bad faith, and was an abuse of discretion; 2) the proposed driveway would create a public nuisance; and 3) the appropriation is unnecessary under state law since the city is not obligated to Stock after he waived the city's warranty regarding access; the city failed to utilize a safer, alternative route; and the proposed road also violates the ODOT'S standards. Because the Hansons have no adequate remedy at law, the court granted the injunction. The city appealed from the order granting the permanent injunction.
On appeal, the city argues in its first and second assignments of error that the trial court erred when it held that the appropriation was unnecessary and was not done for a public purpose. We will address these two assignments of error simultaneously.
The Ohio and United States Constitutions both require that the power of eminent domain be exercised for a public purpose. Section 19, Article I, Ohio Constitution; Fifth andFourteenth Amendments to the United States Constitution; State exrel. Bruestle v. Rich (1953), 159 Ohio St. 13, paragraph seven of the syllabus; and O'Neil v. Bd. of Cty. Commrs. (1965), 3 Ohio St.2d 53,57. The exercise of the power of eminent domain involves discretionary legislative determinations which are not reviewable by the courts except when a party claims that the legislature abused its power. State, ex rel. Gordon v. Rhodes
(1951), 156 Ohio St. 81, 97, and Jones v. Maumee (1925), 20 Ohio App. 455.
In R.C. 163.09(B), the Ohio General Assembly has determined that the courts may review the legislature's decision to appropriate, within the appropriation proceeding itself, with respect to three issues: whether the legislature's determination that the appropriation is necessary was an abuse of discretion; whether the legislature's allegation in its petition that the parties could not agree is true; and whether the legislature or a delegate of the eminent domain power has the right to appropriate the property.
However, since the stated purpose of the appropriation was the creation of a public road, the Hansons were precluded from raising these issues in the appropriation proceeding. R.C.163.08. They could only seek to enjoin the exercise of the city's eminent domain power in a separate action. Cleveland v. BrookPark (1995), 103 Ohio App.3d 275; Brandford Village CondominiumUnit Owner's Assn. v. Upper Arlington (1983), 12 Ohio App.3d 120; and Ferencz v. Toledo (Dec. 30, 1988), Lucas App. No. L-87-379, unreported. When reviewing a permanent injunction award, the appellate court determines whether the trial court abused its discretion. Perkins v. Village of Quaker City (1956), 165 Ohio St. 120,125. In review of the factual findings of the trial court, we must determine whether there is competent, credible evidence to support the findings. Brandford Village Condominium,supra.
Once the legislature has declared that the appropriation is necessary for a public use, its determination will not be disturbed unless the property owner can show that the legislature's determination was a product of fraud, bad faith, or abuse of discretion. State, ex rel. Gordon, v. Rhodes (1951),156 Ohio St. 81, syllabus; Allion v. Toledo (1919), 99 Ohio St. 416, paragraph one of the syllabus; Board of Edu. of the City SchoolDistrict of Columbus v. Holding Corp. of Ohio (1971), 29 Ohio App.2d 114,126; and Ohio Power Co. v. Diller (1969), 18 Ohio App.2d 167. This common law principal is codified in R.C. 163.09(B), which provides that the property owner bears the burden of proving that the legislature abused its discretion in determining that the appropriation is necessary. An abuse of discretion is shown by evidence that the agency's decision to appropriate was unreasonable, arbitrary, or unconscionable. Ohio Power Co. v.Diller (1969), 18 Ohio App.2d 167, 176, and Branford VillageCondominium Unit Owner's Assn. v. Arlington (1983), 12 Ohio App.3d 120,126. The statute also provides that a "resolution or ordinance of the governing or controlling body, council, or board of the agency declaring the necessity for the appropriation shall be prima-facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity." Thus, the court makes a factual finding of whether the agency abused its discretion. Ohio Power Co. v. Diller
(1969), 18 Ohio App.2d 167, 175.
Public use is defined as an appropriation:
 "* * * (1) to enable the United States or astate or one of its subdivisions to carry onits governmental functions and to preservethe safety, health and comfort of the public, whether or not the individual members of the public may make use of the property so taken, provided the taking is made by a public body;(2) to serve the public with some necessityor convenience of life which is required bythe public as such and which cannot be readily furnished without the aid of some governmental power, whether or not the takingis made by a public body, provided the publicmay enjoy such service as of right; (3) incertain special and peculiar cases, sanctioned by ancient custom or justified by the requirements of unusual local conditions, to enable individuals to cultivate their landor carry on business in a manner in which itcould not otherwise be done, if their successwill indirectly enhance the public welfare, even if the taking is made by a private individual and the public has no right toservice from him or enjoyment of the propertytaken." Pontiac Improvement Co. v. Bd ofCommr. of the Cleveland Metro. Park District(1922), 104 Ohio St. 447, 460, limited by State ex rel. Bruestle v. Rich (1953), 159Ohio St. 13, paragraph three of the syllabus, which holds that the public use need not bepermanent.
There also may be some incidental private use so long as the primary purpose of the appropriation is for public use. Id. at paragraph four of the syllabus.
The city first argues that the trial court failed to consider that the city had two purposes for the appropriation, the first being that the city was faced with the possibility of losing the Rye Beach Road interchange or repair to Route 2 because of Stock's driveway problem. The city contends that the repair of Route 2 was the necessary purpose for appropriation permitted under R.C. 163.06(B).
The trial court specifically found that the city's purpose for appropriation was "to satisfy its perceived liability to provide [Stock] with 60 feet of access to Rye Beach Road * * *." We agree with the trial court that this is the underlying purpose behind the appropriation. Unless the city perceived that it was liable to Stock, Stock's problems with ODOT would not be of any concern to the city. Therefore, while the fact that the repair of Route 2 was a concern for the city, it was secondary to its belief that it was liable to Stock for breach of its warranty of access. Second, the city argues that the court's findings regarding its other purpose, the need to avoid liability to Stock, was erroneous and irrelevant as to the issue of whether the appropriation was necessary.
We agree with the city's basic premise that it is their good faith belief that they were liable to Stock that determines whether they abused their discretion in determining that the appropriation was necessary. However, in concluding that the city was not obligated to Stock, the court was in essence finding that it was unreasonable for the city to believe that it was liable to Stock when the contract clearly required that Stock was to object to any easement and failed to do so. The evidence supports the trial court's conclusion.
The central legal issue in this case is whether the constitutional power of eminent domain would permit a city to appropriate property to alleviate potential financial liability from a breach of contract claim that a party might bring against the city. The city cites to several cases arguing that maintaining the city's financial health is a valid public purpose.
The first group of cases are those related to the use of eminent domain power to eliminate urban slums. See, Bruestle v.Rich (1953), 159 Ohio St. 13; Eighth Walnut Corp. v. PublicLibrary of Cincinnati and Hamilton Cty. (1977), 57 Ohio App.2d 137; and Grisanti v. Cleveland (1962), 89 Ohio L. Abstract 1. In these cases, the elimination of blighted areas of the city is done for the benefit of the welfare of the public in more than just a financial sense. Urban renewal promotes safety, health, reputation of a city, as well as the city's tax base, in order to make the city a better place to live.
The second group of cases are those related to appropriation to provide access to landlocked parcels in order to avoid financial liability to the property owners. Andrews v.Indiana (Ind., 1967), 229 N.E.2d 806 and Sturgill v. Kentucky
(Ken.App., 1964), 384 S.W.2d 89. See, also, May v. Ohio TurnpikeCommn. (1962), 172 Ohio St. 555 and Tracey v. Preston (1962),172 Ohio St. 567. The governments in these cases did not need to appropriate all of the property at issue. It was more fiscally sound to provide access to the property than to condemn it and pay for the entire parcel. Thus, the service roads were necessarily a part of the process of creating limited access highways. Even if we agree with the city that maintaining the city's financial health could be a valid public purpose by itself for appropriating property, we disagree that this was the actual motivation in this case. The city council's minutes do not reflect that there was any financial analysis done to suggest that the city would be better off financially if it appropriated the Hansons' property to provide access to Stock's property or that the city weighed its financial circumstances in this dilemma. Interference with the Hansons' expansion of their business would adversely affect the city as well.
The city also contends that the court erred by finding that the city had to utilize an alternative property for access when the alternative would not solve all their problems.
As stated above, we agree that these types of legislative determinations are only subject to review by the courts on the basis of abuse of power. Necessity has been defined by the courts as that which is an absolute physical necessity and also that which is "reasonably convenient or useful to the public." Dayton v. Keys
(1969), 21 Ohio Misc. 105. The fact that other land, equally feasible, can be purchased is irrelevant to the issue of necessity.Giesy v. Cincinnati, Wilmington Zanesville R.R. Co. (1854),4 Ohio St. 308, at the syllabus.
We agree with the city in this instance that it did not abuse its discretion in choosing which property to appropriate. Since the city was appropriating property to fulfill its perceived obligation to Stock, this is the only property that would satisfy that perceived obligation. This fact is irrelevant, however, since we also find that the city abused its discretion by deciding that it was necessary to appropriate any land.
The city's arguments regarding whether the proposed driveway will violate ODOT standards is discussed below with Assignment of Error No. 4.
In conclusion, we find that the trial court's ultimate finding that the city abused its discretion when it determined that the appropriation was necessary for a public purpose is supported by the evidence. Appellant's first and second assignments of error are not well-taken.
In its third assignment of error, the city argues that the trial court erred when it determined that the appropriation constituted fraud, bad faith, and an abuse of discretion based on a finding that the appropriation was not for a public street.
We agree. The trial court held that the proposed driveway does not meet the definition of a public street under R.C. 4511.01(BB), relying on State v. Grubb (1993), 82 Ohio App.3d 187. R.C. 4511.01(BB) provides that a "street" is "* * * a thoroughfare for purposes of vehicular travel." In State v. Grubb
(1993), 82 Ohio App.3d 187, the appellate court held that a "street" running from a street to the University's parking garage is not a public street under R.C. 4511.01(BB) because it does not exist for public use and exists only for access to the parking garage. Therefore, the defendant could not be charged with driving on a public street while intoxicated or a minor traffic violation. We find this case distinguishable solely on the fact that the drive in that case was owned by the University. The proposed drive in this case would be owned by the city. Because the proposed drive provides access to private property does not mean that it is not a public street. May v. Ohio Turnpike Commn.
(1962), 172 Ohio St. 555. We agree with the city that the key is who owns and maintains the street property.
The city's third assignment of error is found well-taken. However, because of our holding as to the first two assignments of error, finding this assignment of error well-taken does not affect the outcome of this case.
In its fourth assignment of error, the city argues that the trial court erred when it determined that the appropriation would create a public nuisance.
The legislature does not have the power to appropriate property in order to create a public nuisance. Brandford VillageCondominium, supra at 121-124. The trial court in this case found that the proposed driveway would still fall within six hundred feet of the Route 2 entrance ramp, which violates ODOT''s standards. Therefore, the court concluded that the city should be enjoined from appropriating the Hansons' property to create a public nuisance.
Upon a review of the evidence, we find that there was competent and credible evidence to support the trial court's finding. While Weiler is an employee of ODOT and testified that ODOT approved the proposed drive, there was also evidence that this letter was written in response to the city's letter suggesting approval of a temporary road until the issue of Stock's driveway could be resolved. Thus, there was no evidence that ODOT would approve of the proposed driveway on a permanent basis in spite of the fact that it violated ODOT standards. The trial court's finding that appropriation of the proposed driveway property would constitute a public nuisance is supported by the evidence. The city's fourth assignment of error is not well-taken.
We conclude that, with the exception noted above regarding the issue of whether the proposed drive is a public street, the trial court's factual findings are supported by the evidence and that the city has failed to demonstrate that the trial court abused its discretion by granting the permanent injunction. Therefore, we find that the trial court did not commit error prejudicial to appellant and affirm the judgment of the Erie County Court of Common Pleas. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
 ______________________ HANDWORK, J.
 James R. Sherck, J., George M. Glasser, J., JUDGES CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.