JOURNAL ENTRY AND OPINION
Defendant-appellant, Anthony Grady, appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a jury trial, finding him guilty of breaking and entering, in violation of R.C.2911.13(A), and sentencing him to ten months of incarceration. Appellant contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Appellant also contends that the trial court committed reversible error in not instructing the jury on the lesser included offense of criminal trespass and that he was denied effective assistance of counsel. Finding no error, we affirm.
On April 25, 2000, appellant was indicted in Case No. CR-390510 on one count of possession of cocaine, in violation of R.C. 2925.11. On July 17, 2000, appellant was indicted in Case No. CR-393927 on one count of burglary, in violation of R.C. 2911.12; one count of possession of criminal tools, in violation of R.C. 2923.24; and one count of theft, in violation of R.C. 2913.02. Appellant pled not guilty to the charges. Prior to trial, the State amended count one of the indictment to breaking and entering, in violation of R.C. 2911.13.
Trial in Case No. CR-393927 commenced on March 20, 2001. Three witnesses testified for the State. Gertrude Jackson testified that she had owned the building at 3820 Martin Luther King Boulevard in Cleveland for over twenty years. Two storefronts (Micro Connection and Chris's Barber Shop) occupied the front of the building and one ground-floor and two second-story apartments occupied the rear. According to Jackson, as of May 25, 2000, the apartments were unoccupied and had not been rented to anyone although all renovation to them had been completed approximately one month earlier. Jackson testified further that she had not hired anyone to do any renovation work for her and no one had permission to be on her property at approximately 4:00 a.m. on May 25, 2000. Jackson also testified that a hammer found in the ground-floor apartment that day did not belong to her.
Isamo Iwais testified that he was the owner of Micro Connection, a retail store that sold pagers, cell phones and CD's between the hours of 11:00 a.m. and 8:00 p.m. Iwais testified that he received a telephone call at approximately 4:30 a.m. on May 25, 2000 from ADT Security Systems informing him that an alarm had gone off in his store. Iwais immediately went to the store and observed that the metal gate in front of the store had not been tampered with and none of the store windows were broken. He looked through one of the windows and, with the exception of a few pagers on the floor in front of a display case, saw nothing unusual so he went home.
Approximately one and a-half hours later, however, Iwais received a telephone call from the Cleveland Police Department regarding a break-in at his store. When Iwais went back to Micro Connection, he observed CD's, pagers and cell-phone chargers strewn across the steps and porch of the rear ground-floor apartment. He also discovered that approximately $8,000 worth of merchandise was missing from his store. Iwais testified that the thieves had apparently broken into the ground-floor apartment behind his store, knocked a hole in the adjoining wall and entered his store through the hole.
On cross-examination, Iwais testified that appellant's co-defendant, Randolph Gordon, was not his employee. He also testified that he had not hired anyone to do any renovation work in his store and had not given anyone permission to be in his store before it opened on May 25, 2000.
Patrol Officer Miguel Salgado testified that at approximately 5:35 a.m. on May 25, 2000, he and his partner received a radio broadcast to respond to 3920 Martin Luther King Drive regarding an alarm that had gone off in the building. Upon their arrival, they observed nothing unusual in the front of the building so they proceeded to the rear. According to Salgado, as the officers approached the southwest corner of the building, they heard banging coming from inside the building and then observed a male exiting the rear ground-floor apartment through an open window. Surprised to see the police, the man dropped the crate of CD's, chargers and pagers that he was carrying, scattering the merchandise over the porch.
After he was apprehended, the man informed the officers that there was another male in the apartment. Although the officers yelled through the open window for the man to come out of the building, no one came out. The officers then entered the apartment through the window and subsequently found appellant hiding in the bathroom.
Salgado testified that once in the apartment, he and his partner observed a lot of debris from the apartment wall on the floor. They also observed a hoe, a shovel and a hammer leaning against the wall.
Salgado also testified that officers from the Scientific Investigation Unit (SIU) of the Cleveland Police Department arrived on the scene at approximately 8:00 a.m. On cross-examination, Salgado admitted that he was not present at the scene when SIU took pictures.
Salgado then identified State's Exhibits 7 through 19. Salgado testified that Exhibit 7 depicted the window at the southwest corner of the building through which appellant and Gordon apparently gained entrance to the ground-floor apartment; Exhibit 8 was a picture of the same window from inside the apartment; Exhibit 9 depicted the hole in the wall between the apartment and Micro Connection used by appellant and Gordon to gain access to Micro Connection; Exhibit 11 showed drywall and a large piece of wood that had been removed from the wall on the apartment floor and a jagged opening in the wall large enough for an adult to step through; Exhibit 12 was a close-up picture of the opening in the wall; Exhibit 13 was a closeup of a shovel found in the apartment near the hole in the wall; Exhibit 14 was a view of the damaged area of the wall from inside Micro Connection; Exhibit 15 was a different view of the damaged wall from inside Micro Connection; Exhibit 16 depicted CD's and cell phone chargers scattered across the steps of the apartment building; Exhibit 17 depicted the blue crate containing CD's that Gordon was carrying when he was apprehended by Salgado and his partner; Exhibit 18 was a close-up of the CD's and cell phone accessories dropped by Gordon when the police surprised him as he was climbing out the apartment window; and Exhibit 19 depicted two screwdrivers found on the ground by the rear of the building.
Jackson likewise identified several of the photographs. She testified that State's Exhibit 7 was a picture of the door to the ground-floor apartment and the window next to the door. She testified that prior to May 25, 2000, the window was covered with a metal screen and plywood. According to Jackson, when she went to the apartment on May 25, 2000 after the police informed her of the break-in, she found the screen and plywood on the ground by the window. Jackson further identified State's Exhibits 10 and 13 as pictures of the damaged wall between the apartment and Micro Connection. Iwais identified State's Exhibits 1 through 6 as pictures of his store and the display cases in his store with missing merchandise.
At the close of the State's case, the photographs comprising State's Exhibits 1 through 19 were admitted without objection and the trial court denied appellant's Crim.R. 29 motion for acquittal.
Barnett Gray testified for the defense that she picked appellant up at his apartment at approximately 4:30 a.m. on May 25, 2000 and drove him to 116th and Dove in Cleveland. According to Gray, her van — which appellant was going to borrow that day — had broken down in the area and appellant had made arrangements for a mechanic to meet him at the van to work on it. Gray testified that she dropped appellant off and then went back home so she was not with him at 5:30 a.m. that morning.
Leroy Alexander testified that appellant called him sometime between 4:00 a.m. and 5:00 a.m. on May 25, 2000, told him that a friend's van had broken down and asked him to meet him at the van to fix it. Alexander testified that as he was working on the van a short time later, he heard someone approach appellant and ask him about some work, some type of drywall or some type of ceiling job or some kind of walls or something. According to Alexander, appellant left with that person and he did not see him again that day.
Appellant testified that he owned a home remodeling business for nineteen years. According to appellant, he called Alexander on May 25, 2000 and told him that a friend's van had broken down in the area of 112th Street and Matilda. He asked Alexander if he would meet him there between 5:00 and 5:30 a.m. to work on the van. Appellant testified that Alexander was already working on the van when Gray dropped him off at 5:15 a.m.
According to appellant, Randolph Gordon approached him shortly thereafter and asked him if he would give him an estimate concerning some drywall work in a store where he was employed. Appellant testified that they entered the building through a window in the back of the building. According to appellant, there was no board over the window or windowpane in the window. Appellant also testified that it was not unusual in his line of work to enter condemned or boarded-up buildings through a window.
Once inside the apartment, appellant observed several holes in the wall which he assumed needed drywall work. He also saw drywall, paint and tools in the apartment. Appellant testified that he was in the apartment only two or three minutes before he asked Gordon if he could use the bathroom. According to appellant, when he subsequently heard the police knock, he could not get out of the bathroom because the door was locked.
On cross-examination, appellant admitted that there were no lights on in the building when he and Gordon entered it but contended that it was light enough outside so that he could see well enough to give an estimate regarding the drywall work.
At the close of his case, appellant renewed his motion for acquittal and the trial court deferred ruling pending the jury verdict. The jury subsequently returned a verdict of guilty on count one, breaking and entering, and not guilty on count two, possession of criminal tools, and count three, theft, and the trial court denied appellant's motion.
On April 30, 2001, pursuant to a plea agreement in Case No. CR-390510, appellant entered a plea of guilty to attempted possession of drugs, in violation of R.C. 2923.02, and the trial court sentenced him to six months in County Jail. The trial court sentenced appellant to ten months incarceration in Case No. CR-393927 and, with credit for time served, appellant was immediately released.
Appellant timely appealed, raising four assignments of error for our review.
Appellant's first assignment of error states:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON A LESSER CHARGE OF CRIMINAL TRESPASS.
In his first assignment of error, appellant contends that the trial court erred in not instructing the jury on the lesser included offense of criminal trespass.
Appellant did not object to the jury instructions at trial, however, or request any specific instructions and thus waived all but plain error. Crim.R. 30(A); State v. Hartman (2001), 93 Ohio St.3d 274, 289, citingState v. Underwood (1983), 3 Ohio St.3d 12, syllabus; State v. Williams
(1977), 51 Ohio St.2d 112. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. To constitute plain error, the error must be obvious on the record, palpable and fundamental, so that it should have been apparent to the trial court without objection. State v. Ross
(Oct. 12, 2000), Cuyahoga App. No. 77126, unreported, citing State v.Tichon (1995), 102 Ohio App.3d 758. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Nicholas (1993), 66 Ohio St.3d 431,436, quoting State v. Moreland (1990), 50 Ohio St.3d 58, 62.
R.C. 2911.21 defines the offense of criminal trespass:
 (A) No person, without privilege to do so, shall do any of the following:
 (1) Knowingly enter or remain on the land or premises of another;
 (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard;
 (3) Recklessly enter or remain on the land or premises of another, as to which notice is given by * * * fending or other enclosure manifestly designed to restrict access.
R.C. 2911.13 defines the offense of breaking and entering:
 (A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense * * * or any felony.
An offense may be a lesser included offense of another if 1) the offense carries a lesser penalty than the other; 2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and 3) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
Criminal trespass is a crime of a lesser degree than breaking and entering; the crimes being a fourth degree misdemeanor and a fourth degree felony, respectively. Moreover, breaking and entering cannot be committed without a criminal trespass. Furthermore, breaking and entering requires, in addition to the element of trespass, "* * * force, stealth, or deception, * * * with purpose to commit therein any theft offense * * * or any felony," elements which are not required to prove the lesser included offense of criminal trespass. State v. Murphy
(1983), 9 Ohio App.3d 248, 250. Thus, criminal trespass is a lesser included offense of breaking and entering. Id.
The standard for determining whether an instruction on the lesser included offense is necessary is well-established:
 The applicable rule is that "even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Raglin (1998), 83 Ohio St.3d 253, 257, quoting State v. Thomas
(1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
As the Supreme Court of Ohio has held, however, not every case requires that the lesser charge be given:
 An instruction is not required every time some evidence is presented. There must be sufficient evidence admitted at trial to allow the jury to reasonably reject the greater offense and find the defendant guilty on the lesser included offense. State v. Shane (1992), 63 Ohio St.3d 630. State v. Goodwin
(1999), 84 Ohio St.3d 331, 345, quoting State v. Goodwin (Apr. 17, 1997), Cuyahoga App. No. 68531, unreported.
As set forth in our discussion regarding appellant's third and fourth assignments of error, the State presented sufficient evidence that appellant entered the building by force with an intent to steal. In light of the evidence presented by the State and the inconsistent testimony presented by appellant, the jury would not have reasonably rejected the greater offense to find appellant guilty of criminal trespass. Thus, the trial court did not err in not instructing the jury on the lesser included offense of criminal trespass.
Appellant's first assignment of error is therefore overruled.
Appellant's second assignment of error states:
 II. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO REQUEST AN INSTRUCTION FOR CRIMINAL TRESPASS AND OBJECT TO THE ADMISSION OF THE STATE'S EXHIBITS 1 — 19.
In his second assignment of error, appellant contends that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, a defendant must show, first, that "counsel's performance was deficient" and, second, that "the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Goodwin (1999), 84 Ohio St.3d 331, 334, quotingStrickland v. Washington (1984), 466 U.S. 668, 687. A Sixth Amendment violation does not occur "unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, 142. To establish prejudice, a defendant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of trial would have been different." Id. at paragraph three of the syllabus.
Appellant first contends that his counsel was ineffective because he failed to request an instruction on the lesser offense of criminal trespass. As set forth above, however, the trial court did not err in not instructing on criminal trespass. Accordingly, appellant's counsel was not ineffective for not requesting such an instruction.
Appellant also asserts that his trial counsel was ineffective because he failed to object to the admission of the State's exhibits at trial even though a proper foundation for the admission of the photographs had not been laid.
In Kubiszak v. Rini's Supermarket (1991), 77 Ohio App.3d 679, 685, this court stated:
 A photograph is not objectionable if it is properly identified, is relevant and competent, and is an accurate representation of the scene which it portrays. A proper foundation is required in which there must be testimony that the photograph is a fair and accurate representation of that which it represents. See Heldman v. Uniroyal, Inc. (1977), 53 Ohio App.2d 21, 25, citing State v. Hill (1967), 12 Ohio St.2d 88, 90; Cincinnati, Hamilton Dayton Ry. Co. V. DeOnzo (1912), 87 Ohio St. 109; Ohio Power Co. V. Diller (1969), 18 Ohio App.2d 167; DeTunno v. Shull (1956), 75 Ohio L.Abs. 602.
Appellant argues that the photographs comprising State's Exhibits 1 through 19 were not properly authenticated because no one from SIU testified at trial regarding the photographs. Appellant's argument is without merit.
"The requirement of authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Andrews v. Riser Foods, Inc. (Oct. 16, 1997), Cuyahoga App. No. 71658, unreported, citing Evid.R. 901(A); Hall v. Johnson (1993),90 Ohio App.3d 451, 455. It is not necessary to show who took the photograph or when it was taken to authenticate a photograph where there is testimony that the photograph is a fair and accurate representation of what it represents. Andrews, supra, citing State v. Brooks (1995),101 Ohio App.3d 260, 264.
Here, contrary to the State's assertion, there was no testimony regarding who took the photographs or when they were taken. No one from SIU testified at trial. Furthermore, although Salgado testified that SIU appeared on the scene at approximately 8:00 a.m. on May 25, 2000 and that SIU "usually comes out and they gather evidence for crime scenes, prints, photos, anything that's going to help out the detective during their investigation," he never testified that SIU took the pictures at issue in this case.
All of the State's exhibits were properly authenticated, however. Iwais identified Exhibits 1 through 6 as pictures of his store and of the empty display cases in his store. Salgado identified State's Exhibits 7 through 19 as accurate representations of the window in the building where Salgado and his partner apprehended Gordon as he attempted to exit the building; the hole in the wall between the apartment and Micro Connection; the tools found in the apartment; and the CD's, cell phone chargers and pagers from Micro Connection that Gordon dropped when he was apprehended. Jackson likewise identified Exhibit 7 as a picture of the window in the apartment without its screen and plywood covering. She also identified Exhibits 10 and 13 as pictures of the damaged wall between the apartment and Micro Connection.
In light of this testimony, all of the photographs were properly authenticated. Accordingly, no objection by defense counsel to their admission was warranted.
Appellant's second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S RULE 29 MOTION SINCE THE STATE FAILED TO PROVE THAT THE DEFENDANT AIDED OR ABETTED THE PRINCIPAL OFFENDER IN THE ALLEGED OFFENSES.
 IV. THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF THE OFFENSES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE FAILED TO PROVE THAT THE DEFENDANT AIDED AND ABETTED THE PRINCIPAL OFFENDER IN THE ALLEGED OFFENSES.
In his third and fourth assignments of error, appellant challenges the sufficiency and weight of the evidence supporting his conviction.
A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380,387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
Appellant was convicted of breaking and entering, in violation of R.C.2911.13.(A), which provides that "no person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."
Appellant contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because the State did not produce any evidence that he aided and abetted co-defendant Randolph Gordon in the commission of the offense. Likewise, appellant contends that his conviction was against the weight of the evidence because the State "did not present sufficient evidence regarding [his] role in any alleged breaking and entering." Appellant's arguments are without merit.
First, appellant was not charged as an accomplice pursuant to R.C.2923.03, the complicity statute; he was charged as a principal offender. Therefore, the State was not required to produce any evidence of aiding and abetting; it needed to prove beyond a reasonable doubt that appellant was guilty of each element of the offense of breaking and entering.[1]
Initially, we note that proof of guilt may be made by circumstantial as well as by direct evidence and both types of evidence "inherently possess the same probative value." State v. Jenks (1991), 61 Ohio St.3d 259, 272. "In some instances, certain facts can only be established by circumstantial evidence." Id.
Here, the State presented evidence, albeit circumstantial, that appellant and Gordon used force to enter the building. Although appellant testified that there was no covering over the window when he crawled through it, Jackson — who owned the building for over twenty years — testified the window was covered by a piece of plywood over a metal screen, both of which she found on the ground next to the window after the break-in. Furthermore, Salgado identified State's Exhibit 19 as a picture of two screwdrivers found on the ground by the rear of the building.
Likewise, the State presented sufficient circumstantial evidence that appellant used force to enter Micro-Connection. Salgado testified that as he and his partner rounded the rear corner of the building and saw Gordon trying to climb out the window, they heard banging coming from inside the building. Salgado testified further that after he and his partner entered the apartment, they observed a hoe, shovel and hammer leaning against the wall. They also observed a lot of debris from the apartment wall on the floor of the apartment. Similarly, the State's exhibits depicted a large, jagged hole in the wall between the apartment and Micro Connection and pieces of drywall and wood obviously removed from the wall on the floor. This evidence was sufficient to allow the jury to reasonably infer that the noise Salgado heard was appellant banging on the wall between the apartment and Micro Connection trying to make a hole in the wall in order to gain access to Micro Connection.
The State also presented sufficient evidence that appellant trespassed in the building. Jackson testified that no one had permission to be on her property in the early morning hours of May 25, 2000. Jackson also testified that, contrary to appellant's testimony, she had not hired anyone to do any renovation work for her in the apartments and that all the renovation work was completed as of May 25, 2000. Likewise, Iwais testified that he had not given anyone permission to be in his store before it opened on May 25, 2000 nor hired anyone to do any renovation work in his store.
Finally, there was sufficient evidence that appellant's intent upon entering the building was to steal from Micro Connection. "Intent `can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances.'"State v. Lott (1990), 51 Ohio St.3d 160, 168, quoting State v. Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus.
The only inference from "the surrounding facts and circumstances" of this case is that appellant entered the building with an intent to steal. First, contrary to appellant's testimony, it is not common to enter buildings through a window. Moreover, appellant's testimony was inconsistent: he testified that Gordon asked him to give him an estimate regarding drywall work in the store where he worked yet, according to appellant, he and Gordon were looking at the holes in the walls in theapartment behind the store. Furthermore, if appellant and Gordon were on the premises only to give an estimate for drywall work in the apartment, why was the alarm in Micro Connection triggered? Finally, if Gordon and appellant were in the building solely to discuss drywall, why was Gordon climbing out of the window with a crate of merchandise from Micro Connection in his hand? Common sense dictates that appellant's intent in entering the building, like Gordon's, was to steal from Micro Connection.
We hold, therefore, that construing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of breaking and entering proven beyond a reasonable doubt. Likewise, for the reasons set forth above, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be reversed. Rather, after reviewing the entire record of the proceedings and upon thorough consideration of the law and evidence presented at trial, we find that there was substantial, competent, credible evidence upon which the jury could have found appellant guilty of breaking and entering, in violation of R.C. 2911.13.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Thus, the State's argument on appeal that it presented sufficient evidence to demonstrate that "appellant was complicit" with Gordon and that the "jury properly reasoned that appellant aided and abetted the principal offender, Randolph Gordon," is disturbing. There was no complicity charge in the indictment nor was aiding and abetting the State's theory of the case at trial.